# United States Court of Appeals for the Federal Circuit

---

**PHILIP D. MUNRO,**
*Claimant-Appellant,*

**v.**

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2009-7110

---

Appeal from the United States Court of Appeals for Veterans Claims in 07-0083, Judge Robert N. Davis.

---

Decided: August 6, 2010

---

KENNETH M. CARPENTER, Carpenter, Chartered, of Topeka, Kansas argued for claimant-appellant.

MARTIN F. HOCKEY, JR., Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. On the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, KIRK T. MANHARDT, Assistant Director, and MEREDYTH COHEN HAVASY, Attorney. Of counsel on the brief were MICHAEL J. TIMINSKI, Deputy Assistant General Counsel, and

MARTIN J. SENDEK, Attorney, Office of the General Counsel, United States Department of Veterans Affairs, of Washington, DC.

———————————

Before RADER, *Chief Judge*, BRYSON, and DYK, *Circuit Judges*.

DYK, *Circuit Judge*.

Philip D. Munro ("Munro") appeals from a final judgment of the United States Court of Appeals for Veterans Claims ("Veterans Court"). The Veterans Court affirmed a decision of the Board of Veterans' Appeals ("Board") denying Munro an earlier effective date for an increased rating for his service-connected granuloma of the left lung and total disability based on individual unemployability ("TDIU"). *See Munro v. Peake*, No. 07-0083, 2008 WL 5101148 (Vet. App. Oct. 15, 2008). We affirm.

## BACKGROUND

Munro claims that he is entitled to a 1995 or 1997 effective date for increased compensation for his service-connected disability because of informal claims for that disability that were made in those years. Under the pertinent statute and regulations, the effective date for increased benefits based on a claim can generally be no earlier than the filing date of the claim. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400(o)(1). The effective date will generally date back to the date of an earlier claim if that claim was still pending on the date of the award. *See Williams v. Peake*, 521 F.3d 1348, 1351 (Fed. Cir. 2008). The question here is whether 1995 and 1997 informal claims were still pending or were deemed denied when the Department of Veterans Affairs ("VA") in November 1997 denied a formal claim for increased benefits for the same disability.

Munro served on active duty in the United States Navy from June 1958 to May 1962. During his military service, Munro experienced respiratory difficulties, and a lesion was identified in his left lung. The lesion was surgically removed at a naval hospital in July 1961 and identified as a fibrocaseous granuloma. After his surgery Munro returned to duty and was discharged in 1962.

In September 1992, Munro filed a VA claim for service connection and compensation for "[r]espiratory difficulties." J.A. 24. In March 1993, the VA regional office ("RO") granted service connection for the granuloma of the left lung identified while Munro was in the service, but found the condition asymptomatic with a zero percent disability rating, attributing Munro's respiratory difficulties to non-service-connected chronic obstructive pulmonary disease ("COPD") resulting from forty years of smoking. Munro did not appeal that decision. A year later, in March 1994, Munro filed a claim for an increased rating, which the RO denied the following month. Munro again did not appeal.

In May 1995, Munro underwent pulmonary tests at a VA medical center, where a physician diagnosed Munro with "Severe Obstructive Airways Disease." J.A. 41. In April 1997, the same VA physician noted that Munro had "[s]evere COPD" and was "totally 100% [p]ermanently disabled." J.A. 42.

In September 1997, Munro requested a reopening of his claim for an increased rating for his service-connected lung condition. He stated that he felt "the condition has progressed to a point where it is totally disabling." J.A. 108. Munro requested all of his VA medical records from 1993 to 1997 to be secured as evidence to support his claim for an increased rating. The VA medical center only supplied the RO with records dating back to the start of

1996.  In a November 1997 decision, the RO denied Munro's claim for increase, noting that it considered "[o]utpatient treatment reports from the Fargo VA Medical Center dated 03-19-96 to 07-18-97."  J.A. 43.  The RO found that the "VA medical reports show that the veteran has severe chronic obstructive pulmonary disease," "which [is] non-service connected," and that "the medical reports are unrelated to treatment for a left lung granuloma."  *Id.* Munro did not appeal that decision.

On March 31, 2003, Munro filed another formal claim for an increased rating for his service-connected disability.  In May 2003, the RO increased Munro's disability rating for his left lung granuloma to 60 percent, effective April 1, 2003.  In June 2003, Munro filed a formal claim for total disability based on individual unemployability, which the RO granted effective April 1, 2003, based upon Munro's schedular disability rating and evidence of unemployability.  In November 2003, the RO revised the effective date for both ratings to March 31, 2003, the date of Munro's formal claim.

Munro filed a notice of disagreement with the RO, arguing that he was entitled to an earlier effective date for the ratings increases based on a pending informal claim raised by the April 1997 VA medical record.  The RO denied an earlier effective date because it found that the April 1997 report had been considered as part of the November 1997 RO decision, and, moreover, concluded that the report could not be an informal claim because it related to Munro's non-service-connected COPD, not his service-connected left lung granuloma.  Munro then appealed to the Board.  The Board similarly rejected Munro's argument that the April 1997 VA medical report was an informal claim, because "[t]he cited medical record described 'COPD' . . . which was not a disability for which service connection had been granted.  No mention was

made of the granuloma." J.A. 77. Munro appealed the Board's decision to the Veterans Court.

Before the Veterans Court, Munro again argued that the April 1997 VA medical report was an informal claim for increased benefits and TDIU based on his service-connected disability that had never been adjudicated by the VA, warranting an earlier effective date. Apparently for the first time Munro argued that the May 1995 VA medical report also constituted a pending informal claim for increased benefits, warranting an earlier effective date. The Veterans Court, quoting our decision in *Williams*, 521 F.3d at 1351, stated that "[a] subsequent final adjudication of a claim which is identical to a pending claim that had not been finally adjudicated terminates the pending status of the earlier claim. The later disposition, denying the claim on its merits, also decides that the earlier identical claim must fail." *See Munro*, 2008 WL 5101148, at *1 (quotation marks omitted). Under this implicit denial rule, the court held that even "if [the May 1995 and April 1997] medical documents were informal claims as Mr. Munro contends, the November 1997 RO decision served to adjudicate them." *Id.* at *2. The Veterans Court affirmed the denial of Munro's claim for an earlier effective date. *Id.* Munro timely appealed.

DISCUSSION

We have jurisdiction to review decisions of the Veterans Court "with respect to the validity of a decision of the Court on a rule of law or of any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the Court in making the decision." 38 U.S.C. § 7292(a); *see Forshey v. Principi*, 284 F.3d 1335, 1359 (Fed. Cir. 2002) (en banc) ("We hold that we have jurisdiction over . . . issues of interpretation if the Court of Appeals for Veterans Claims

elaborated the meaning of a statute or regulation and the decision depended on that interpretation . . . ."). Under the statute as amended in 2002, *see* Veterans Benefits Act of 2002, Pub. L. No. 107-330, § 402(a), 116 Stat. 2820, 2832 (codified at 38 U.S.C. § 7292(a)), we have jurisdiction to review all legal questions decided by the Veterans Court. *See Szemraj v. Principi*, 357 F.3d 1370, 1374–75 (Fed. Cir. 2004). We review a claim of legal error in a decision of the Veterans Court without deference. *Id.* at 1372.

A claim for benefits, whether formal or informal, remains pending until it is finally adjudicated. *Adams v. Shinseki*, 568 F.3d 956, 960 (Fed. Cir. 2009); 38 C.F.R. § 3.160(c). A claim will also remain pending if the VA failed to notify a veteran of the denial of his claim. *Cook v. Principi*, 318 F.3d 1334, 1340 (Fed. Cir. 2002) (en banc). It is established, however, that in certain circumstances, under the implicit denial rule, "a claim for benefits will be deemed to have been denied, and thus finally adjudicated, even if the [VA] did not expressly address that claim in its decision." *Adams*, 568 F.3d at 961.

Munro argues that the Veterans Court erred in applying the implicit denial rule. First, he argues that the implicit denial rule does not apply to pending informal claims. Second, he argues that the rule does not apply where a veteran is not put on notice that the earlier pending claims are being rejected by an explicit discussion of those earlier claims in a later VA decision. We address each of these arguments in turn. In doing so, we must assume, as the Veterans Court did, that the May 1995 and April 1997 VA medical reports were informal claims for increased disability ratings related to Munro's service-connected granuloma of the left lung. While the government urges that these records related only to Munro's non-service-connected COPD and could therefore

not be informal claims, this raises fact issues over which we lack jurisdiction.

With regard to Munro's contention that the implicit denial rule cannot apply to informal claims—only to formal claims—we see no proper basis to distinguish between formal and informal claims. Munro asserts that 38 C.F.R. § 3.157(b) mandates the separate adjudication of informal claims. The regulation provides in relevant part:

> (b) *Claim.* Once a formal claim for pension or compensation has been allowed or a formal claim for compensation disallowed for the reason that the service-connected disability is not compensable in degree, receipt of one of the following will be accepted as an informal claim for increased benefits or an informal claim to reopen. . . .

> (1) *Report of examination or hospitalization by Department of Veterans Affairs or uniformed services.* The date of outpatient or hospital examination or date of admission to a VA or uniformed services hospital will be accepted as the date of receipt of a claim.

However, 38 C.F.R. § 3.157(b) only establishes that evidence such as VA medical reports will be accepted as informal claims for increased compensation, not that informal claims require separate consideration from formal claims. Munro urges that informal claims are different because the veteran "may not have been aware . . . that the records existed." Claimant-Appellant's Br. 1. But the regulations provide an absolute right in a case such as this for veterans to secure their VA medical records. *See* 38 C.F.R. § 1.513(b)(1)(ix). Here, Munro notably does not claim that he was unaware of the medical records alleged to constitute the informal claims, and

indeed urged the VA to obtain and consider those records in connection with the September 1997 formal claim.

In *Williams*, we applied the implicit denial rule in holding that "a subsequent final adjudication of a claim which is identical to a *pending claim* that had not been finally adjudicated terminates the pending status of the earlier claim," 521 F.3d at 1351 (emphasis added), while recognizing that a "[p]ending claim" can originate as a "formal or informal" claim, *see id.* at 1350 (quoting 38 C.F.R. § 3.160(c)). In *Adams*, we explicitly applied the rule to an informal claim. *See* 568 F.3d at 963 (affirming a Veterans Court holding that an RO "decision alluded to the underlying claims in a manner that put Mr. Adams on notice that his *informal* claim for bacterial endocarditis . . . was also denied" (emphasis added)). Therefore, we hold that the implicit denial rule may be applied to terminate the pending status of both formal and informal claims.

This leaves us the question of whether the implicit denial rule is applicable here. In *Deshotel v. Nicholson*, 457 F.3d 1258 (Fed. Cir. 2006), we held that where a veteran files two closely related claims but the VA decision rules explicitly on only one of those claims, the implicit denial rule requires that the other claims also be treated as denied. There, the veteran in July 1984 sought service connection for disabilities related to a head trauma. He sought compensation for psychiatric disabilities as well as physical disabilities. *Id.* at 1259. The RO's decision granted service connection for physical disabilities resulting from the head trauma, but did not address any claim for psychiatric disability. *Id.* at 1259–60. Following a 2000 grant of service connection for the psychiatric condition, the veteran argued that his effective date for that disability should be July 1984. We rejected his contention that the July 1984 psychiatric

claim remained pending, holding that "[w]here the veteran files more than one claim with the RO at the same time, and the RO's decision acts (favorably or unfavorably) on one of the claims but fails to specifically address the other claim, the second claim is deemed denied, and the appeal period begins to run." *Id.* at 1261 (citing *Andrews v. Nicholson*, 421 F.3d 1278 (Fed. Cir. 2005)).

Thereafter, in *Williams*, we held that "a subsequent final adjudication of a claim which is identical to a pending claim that had not been finally adjudicated terminates the pending status of the earlier claim." 521 F.3d at 1351. In that case, the veteran filed a claim in March 1977 for service connection related to a nervous condition. *Id.* at 1349. The RO disallowed the claim three months later because the veteran failed to provide information, but the veteran never received notice that the claim had been disallowed. *Id.* The veteran filed another claim for service connection for his nervous condition in October 1978, which the RO denied on the merits. *Id.* In 1994, the VA granted the veteran service connection for schizophrenia, at which point he argued that he was entitled to an earlier effective date relating back to his March 1977 claim, which he argued remained pending because he was not notified of its denial. *Id.* Rejecting the argument that the March 1977 claim remained pending, we explained:

> The later disposition, denying the claim on its merits, also decides that the earlier identical claim must fail. The notice given that the later claim has been disallowed informs the veteran that his claim for service connection has failed. This notice affords the veteran the opportunity for appeal to the BVA, and if necessary to the Veterans Court and this court, so that he might demonstrate that his claim for service connection should have been sustained.

*Id.* at 1351. Thus, under the implicit denial rule, the denial of a claim will terminate the pending status of any identical pending claims. *See also Charles v. Shinseki*, 587 F.3d 1318, 1323 (Fed. Cir. 2009) ("[W]hen the substance of a later-filed claim is addressed in an RO decision, the claimant can infer that the earlier-filed claim based on the same disability has also been adjudicated." (citing *Williams*, 521 F.3d at 1350)).

*Adams v. Shinseki*, 568 F.3d 956, clarified the notice requirement for the implicit denial rule. In that case, the veteran filed a claim for service connection in April 1951 for rheumatic heart disease, which the VA denied in June 1951. *Id.* at 959. Not long thereafter, the veteran was hospitalized in a VA medical facility and diagnosed with rheumatic heart disease and endocarditis. The RO reviewed the VA medical reports, but found that they did not reveal any new and material evidence about whether the heart disease was connected to the veteran's service. *Id.* In October 1951, the veteran submitted an affidavit to the RO referring the VA to the hospital report and both diagnoses, but again the RO sustained the denial of the veteran's heart disease claim. *Id.* The veteran appealed to the Board, contending that he was entitled to service connection for a "heart condition." The Board denied the appeal, noting that it had considered the entire record, including the VA medical reports and the veteran's affidavit, and found no evidence of "active rheumatic fever or other active cardiac pathology during service." *Id.*

In 1997, the VA awarded service connection for endocarditis, and the veteran sought a 1951 effective date on the basis that his 1951 endocarditis claim remained pending. *Id.* Relying on *Deshotel*, we held that the RO's decision in October 1951 was a denial of both the rheumatic heart disease claim and the endocarditis claim, even though the RO decision did not explicitly address

endocarditis. *Id.* at 961–64. In doing so, we noted that "the implicit denial rule is, at bottom, a notice provision." *Id.* at 965. Thus, the proper notice standard is "whether [a VA decision] provided sufficient information for a reasonable claimant to know that he would not be awarded benefits for his asserted disability." *Id.* at 963. This does not require a VA decision to expressly discuss a pending claim for it to be deemed denied. "The 'implicit denial' rule provides that . . . a claim for benefits will be deemed to have been denied . . . even if the [VA] did not expressly address that claim in its decision." *Id.* at 961. We therefore concluded that the veteran had received sufficient notice that his claims had been denied, because of the close association of his claims and the fact that in 1951 both the RO and the Board had considered his affidavit and hospital records. *Id.* at 963–65.

Here, as in *Williams*, the informal claims raised by the May 1995 and April 1997 medical reports and the formal claim filed in September 1997 were identical. Action by the VA denying a claim identical to an earlier claim as a matter of law provides notice that the earlier claim has been denied. As noted above, we must assume that all of Munro's claims were for an increased rating related to his service-connected granuloma of the left lung, rather than for COPD. Munro contends, however, that his claims were not the same, because the April 1997 informal claim raised an extraschedular claim for TDIU that was not addressed by the November 1997 RO decision. But this is not the case, as the RO decision explicitly denied extraschedular compensation for TDIU. The RO decision stated that "[t]he regular schedular standard is shown to be adequate to compensate the veteran's disability. An exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization has not

been presented." J.A. 43. Therefore, because Munro's earlier informal claims were identical to his later claim, the VA's denial of his later claim was sufficient to notify him that his earlier informal claims were also denied.

While the implicit denial rule is applicable because Munro's May 1995 and April 1997 informal claims were identical to his September 1997 formal claim, Munro also had other reasons to understand that his informal claims were being denied in the November 1997 RO decision. That decision cited "[o]utpatient treatment reports from the Fargo VA Medical Center dated 03-19-96 to 07-18-97" as evidence the VA had considered. J.A. 43. This would have included the medical report upon which Munro's April 1997 informal claim was founded. The fact that the VA denied Munro's September 1997 formal claim while considering this report was a clear indication that any informal claim raised by the April 1997 report was also denied. In addition, when Munro filed his September 1997 claim, he based that claim in part on his May 1995 report by requesting the VA to obtain and consider his "outpatient records from VAMC Ft. Meade for the period 1993 to 1997" as evidence. J.A. 108. Although it may have been error for the VA to fail to secure and consider all of the records, that is an issue that Munro should have raised on appeal. A reasonable claimant would read the November 1997 RO decision as denying the entire claim for increased benefits based on the records that the veteran alleged were pertinent. Munro therefore had multiple reasons to know that any pending informal claims he may have had were denied by the November 1997 RO decision.

Veterans with service-connected disabilities may visit VA hospitals regularly for examination or treatment. This will result in the creation of multiple treatment records. This may lead to multiple informal claims under

38 C.F.R. § 3.157, as here in this case. It is not necessary for the VA to address every one of these informal claims separately, nor is it reasonable to expect them to do so, particularly where the claims relate to the same service-connected disability. The failure to mention every pending informal claim in a VA decision does not preserve those claims. Here, even though the May 1995 and April 1997 informal claims were not expressly discussed, upon reading the RO's November 1997 decision, a reasonable claimant would know that he would not be awarded increased benefits for his asserted disability based on those VA medical records. Therefore, those informal claims were deemed denied by that decision. The Veterans Court's judgment is affirmed.

## AFFIRMED

### COSTS

No costs.