# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 08-1561

DENNIS W. COGBURN, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued September 21, 2010[1]                    Decided December 13, 2010)

*Kenneth M. Carpenter*, of Topeka, Kansas, with whom *Robert F. Howell,* of Del Ray Oaks, California, for the appellant.

*Tamika N. Springs,* with whom *John H. Thompson*, Acting General Counsel, *R. Randall Campbell*, Assistant General Counsel, *Joan E. Moriarty*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before GREENE, HAGEL, and SCHOELEN, *Judges*.

HAGEL, *Judge*, filed the opinion of the Court. SCHOELEN, *Judge*, filed a concurring opinion.

HAGEL, *Judge*:  Dennis W. Cogburn appeals though counsel a January 28, 2008, Board of Veterans' Appeals (Board) decision that denied entitlement to an effective date earlier than October 1, 1991, for the award of VA benefits for post-traumatic stress disorder, including denying that there was clear and unmistakable error in a June 1993 regional office decision.  The Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).  The case was sent to a panel to address an issue of first impression, which is whether application of the implicit denial doctrine in this circumstance violated the appellant's due process right to notice of VA's decision and appellate process.  Because

---

[1]The Court expresses its appreciation to the University of Georgia School of Law, in Athens, Georgia, for hosting oral argument in this case.

the Board did not make any findings with regard to whether the implicit denial doctrine applied to Mr. Cogburn's claim, the Court will vacate the January 28, 2008, Board decision and remand the matter for readjudication consistent with this decision.

## I. FACTS

Mr. Cogburn served on active duty in the U.S. Army from August 1968 to August 1971, including service in Viet Nam.

### A. 1974 Claim

In November 1974, Mr. Cogburn filed a claim for a "*severe nervous condition*." Record (R.) at 948. On his application, he separately underlined the word "compensation" and the word "pension." R. at 947. He also indicated in his application that he was treated for his nervous condition at a VA hospital in Albuquerque, New Mexico, in November 1974. A VA hospital summary for the period from November to December 1974 indicates that Mr. Cogburn was depressed and anxious and suffered from feelings of inferiority. Subsequently, in February 1975, a VA regional office issued a decision denying Mr. Cogburn entitlement to pension. A letter attached to that decision informed him that this was because his "disabilities are not sufficient to permanently prevent [him from] engaging in substantially gainful employment." R. at 937. The rating decision identified his medical condition as "*depressive neurosis*" and specifically stated, "[t]his is a claim for pension." R. at 939. The decision made no reference to a claim for disability compensation. Mr. Cogburn did not appeal that decision.

Subsequent to that decision, Mr. Cogburn continued to receive psychiatric treatment. In October 1975, Mr. Cogburn was hospitalized and diagnosed with schizophrenia, chronic, undifferentiated type. Mr. Cogburn was hospitalized again in August 1976, where he was again diagnosed with schizophrenia, chronic, undifferentiated type.

### B. 1983 Claim

In June 1983, Mr. Cogburn again filed a claim for VA benefits due to a "*nervous disorder*." R. at 911. On his application, he indicated that his condition "began soon after discharge. Began treatment in 1972." R. at 912. In a January 1984 decision, the regional office found that Mr. Cogburn was not entitled to VA disability compensation benefits for *post-traumatic stress disorder*

2

but that he was "entitled to non-service connected pension benefits due to [his] post[-]traumatic stress disorder." R. at 880. The decision also informed Mr. Cogburn that "[t]his disorder was not determined to be service connected in nature since there was no recognizable stressor found during your examination." *Id.* In March 1984, Mr. Cogburn filed a Notice of Disagreement and ultimately appealed that decision to the Board. In April 1985, the Board remanded Mr. Cogburn's claim to obtain additional treatment records and to afford him a VA psychiatric examination. Although additional treatment records were obtained, Mr. Cogburn failed to report for his scheduled VA psychiatric examination. Accordingly, in a November 1985 decision, the Board found that Mr. Cogburn did not have post-traumatic stress disorder that was caused by his experience in Viet Nam. The Board also found that "the preponderance of the medical evidence suggests that [Mr. Cogburn]'s post service emotional and adjustment difficulties are manifestations of schizophrenia." R. at 822. The Board did not, however, discuss whether Mr. Cogburn's schizophrenia was related to his active service. Mr. Cogburn did not appeal that decision.

### C. 1991 Claim

In October 1991, Mr. Cogburn requested that his claim for VA benefits for "post-traumatic stress disorder" be reopened. In March 1992, the regional office issued a confirmed rating decision, finding that new and material evidence had not been received to reopen Mr. Cogburn's claim. Mr. Cogburn appealed that decision, and in a June 1993 decision, the regional office awarded Mr. Cogburn entitlement to VA benefits for post-traumatic stress disorder, assigning a 100% disability rating, effective October 1, 1991, the date his claim to reopen was received.

In November 1993, Mr. Cogburn submitted a statement indicating that he was filing a formal claim for "redetermination of the effective date" of his award for VA benefits for post-traumatic stress disorder, "from Nov[.] 1, 1991, to a date in 1974 when [I] first filed a claim for a nervous condition, or to such other date as is established by the evidence." R. at 670. Specifically, Mr. Cogburn contended that clear and unmistakable error was committed when VA failed to obtain certain records prior to 1993 and when the October 1991 effective date was assigned, because "[t]he evidence that was eventually found adequate to establish service connection at 100% has been available at all times material to this case." R. at 671. In a November 1995 letter, Mr. Cogburn was notified that a stay that pertained to his claim had been lifted, and that pursuant to a recent decision

3

by the United States Court of Appeals for the Federal Circuit (Federal Circuit), the regional office did not have the authority to consider his request for revision based on clear and unmistakable error. Therefore, he should file a motion for reconsideration with the Board.

In a January 2001 rating decision, the regional office stated that, based on a review of Mr. Cogburn's file, it was accepting jurisdiction over whether there was clear and unmistakable error in the June 1993 regional office decision. In March 2002, Mr. Cogburn filed a statement with the regional office, asserting that he was "totally confused as to the current status" of his claim. R. at 555. In May 2002, Mr. Cogburn again filed a statement with the regional office, inquiring as to the status of his unadjudicated claims. Specifically, Mr. Cogburn asserted that his 1974 claim for a "severe nervous condition" was never addressed. In October 2002, the regional office issued a decision, finding that an earlier effective date for service connection for post-traumatic stress disorder was not warranted and that VA benefits for a nervous condition, claimed in November 1974, had already been adjudicated as a claim for post-traumatic stress disorder in the November 1985 Board decision and remained denied.

Mr. Cogburn filed a Notice of Disagreement disagreeing, in pertinent part, with the regional office's determination that his 1974 claim for a "severe nervous condition" and "dysthmia, i.e. depressive neurosis" was denied nine years later in a Board decision that denied compensation benefits for post-traumatic stress disorder on the basis of the absence of a recognizable stressor, when neither of the earlier claimed conditions required evidence of a stressor. R. at 470-71. Mr. Cogburn subsequently perfected his appeal to the Board.

In June 2007, Mr, Cogburn testified at a Board hearing. At the Board hearing, Mr. Cogburn was represented by a non-attorney representative from the American Legion. At the hearing, Mr. Cogburn and his representative stated clearly that Mr. Cogburn was not alleging clear and unmistakable error in the 1974 regional office decision, but rather that the 1974 disability compensation claim had never been adjudicated and thus remained pending.

In the January 2008 Board decision currently on appeal, the Board found that "[t]he June 28, 1993, rating decision establishing service connection for [post-traumatic stress disorder] with an effective date of October 1, 1991, is final and the appeal for an earlier effective date for [post-traumatic stress disorder] based upon a March 2002 claim is legally precluded." R. at 5. The Board

4

also found that Mr. Cogburn had not submitted a motion for reconsideration or alleged clear and unmistakable error in the "November 1985 Board decision which effectively resolved any pending service connection claims for [post-traumatic stress disorder] and that determination is considered final." R. at 8.

### D. Arguments on Appeal

On appeal, in his principal brief, Mr. Cogburn contends that his 1974 claim for a "severe nervous condition" was not the same "claim" as the one denied by the Board in 1985. He also argues that the Board did not provide adequate reasons or bases for its conclusion that the 1974 claim was based on the same disability as his June 1983 claim. Mr. Cogburn further asserts that he never sought an earlier effective date for his post-traumatic stress disorder and that he does not agree with this characterization of his claim. Most significantly, in his supplemental brief, Mr. Cogburn also argues that "to hold that [his] 1974 claim was denied by the 1985 [Board] decision would deprive him of his fifth amendment right to due process of law and would exceed the limits placed on the 'implicit denial doctrine.'" Appellant's Supplemental Brief (Br.) at 7.

In response, the Secretary argues that the Court should affirm the January 2008 Board decision because the Board's decision was not clearly erroneous. The Secretary contends that Mr. Cogburn's request for an earlier effective date is a free-standing claim, which is precluded as a matter of law. Secretary's Br. at 6 (citing *Rudd v. Nicholson*, 20 Vet.App. 296, 300 (2006)).[2] The Secretary also contends that *Boggs v. Peake*, 520 F.3d 1330, 1334 (Fed. Cir. 2008), supports the Board's finding that Mr. Cogburn's 1974 claim for a nervous disorder was properly adjudicated. Finally, the Secretary asserts that the Board provided an adequate statement of reasons or bases for its decision. In his supplemental brief, the Secretary argues that "[Mr. Cogburn]'s due process rights were not violated by the finding that his 1974 claim for entitlement to service connection for a 'nervous condition' was implicitly denied in the 1985 Board decision because [he] received adequate notice of, and an opportunity to respond to, the decision." Secretary's Supplemental Br. at 1.

---

[2]More precisely stated, a claimant seeking an effective date that is earlier than the one found by VA has only two options depending on the status of the adjudication assigning the effective date. If the decision assigning the effective date has not become final, the appellant may file a direct appeal challenging the effective date. If, however, the decision assigning the effective date has become final, the only means by which a claimant may obtain an earlier effective date is by a collateral attack on the regional office or Board decision that assigned the effective date.

5

At oral argument, Mr. Cogburn argued that the issue in this case was whether VA's assertion that Mr. Cogburn's 1974 claim was implicitly denied, if accurate, would violate Mr. Cogburn's right to due process due to the lack of notice of the denial. He argued that, in the alternative, if Mr. Cogburn's claim for disability compensation due to a "nervous disorder" was not implicitly denied, then it was still pending. In response, the Secretary argued that any issue that was pending in 1974 was subsumed by the June 1985 Board decision and that if Mr. Cogburn believed that he had a claim left pending, he should have appealed the 1975 regional office decision on direct appeal to the Board. In rebuttal, Mr. Cogburn reiterated that he could not exercise his due process rights because he did not receive notice of a decision on his 1974 claim for compensation benefits in either 1975 or 1985.

E. Panel Issues

On appeal, the Court must first address what disabilities for which Mr. Cogburn filed claims in 1974 and 1983. The Court must next determine what, if any, of Mr. Cogburn's claims remain pending, and, if there are any claims that remained pending, whether the implicit denial doctrine applies to those claims. This determination is complicated by the fact that the Board did not make any such determinations. Thus, it must be specifically determined whether (1) Mr. Cogburn filed more than one claim in 1974; (2) what claim(s) were adjudicated in 1974; (3) what disabilit(ies) Mr. Cogburn claimed in 1983, to include, depressive neurosis, schizophrenia, and post-traumatic stress disorder; (4) whether the 1983 claim was for the same disability as the 1974 claim; and (5) what, specifically, was adjudicated in the 1985 claim? To provide the Board guidance regarding its adjudication of this case upon remand, we will address each of these questions in the analysis below.

## II. ANALYSIS

### A. The Due Process Clause

In pertinent part, the Fifth Amendment of the U.S. Constitution reads "No person shall . . . be deprived of life, liberty, or property without due process of law." In *Cushman v. Shinseki*, the Federal Circuit held that "entitlement to [VA] benefits is a property interest protected by the Due Process Clause of the Fifth Amendment to the United States Constitution," and that as such, veterans have a constitutional right to a fair adjudication of their claims for benefits. 576 F.3d 1290, 1298 (Fed. Cir. 2009); *see also Gambill v. Shinseki*, 576 F.3d 1307, 1310-11 (Fed. Cir. 2009) (noting that

the Federal Circuit has recently held that the Due Process Clause applies to proceedings for veterans benefits.).

Fifth Amendment procedural due process of law includes notice and a fair opportunity to be heard. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950); *see also Dusenbury v. U.S.*, 534 U.S. 161, 167 (2002) ("From these cryptic and abstract words, we have determined that individuals whose property interests are at stake are entitled to notice and an opportunity to be heard." (internal citations omitted)). Specifically, the notice provided must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314.

Both elements of due process, notice and an opportunity to be heard, have long played an integral part in the veterans benefits arena. Pursuant to 38 U.S.C. § 5104, when the Secretary makes a decision affecting the benefits of a claimant, the Secretary must provide the claimant and his or her representative notice of that decision. Specifically, "[s]uch notice shall clearly set forth the decision made, any applicable effective date, the reason(s) for the decision, the right to a hearing on any issue involved in the claim, the right of representation and the right, as well as the necessary procedures and time limits, to initiate an appeal of that decision." 38 C.F.R. § 3.103(b) (2010); *see Fournier v. Shinseki*, 23 Vet.App. 480, 482, n.1 (2010). Indeed, "[t]he entire thrust of the VA's nonadversarial claims system is predicated upon a structure which provides for notice and an opportunity to be heard at virtually every step in the process." *Thurber v. Brown*, 5 Vet.App. 119, 123 (1993).

In *Walters v. National Association of Radiation Survivors*, the Supreme Court analyzed the application of the Due Process Clause to the veterans benefits system. 473 U.S. 305 (1985). Although the veterans benefits system has changed significantly in the 25 years since that decision,[3] the Supreme Court recognized the informal and pro-claimant nature of that system, and stated that accordingly, the Due Process Clause did not require the same kinds of procedures that would be required in a more a conventional, adversarial proceeding. In *Walters*, the Supreme Court

[3]Most notably, the Veterans Judicial Review Act, Pub. L. No. 100-687, 102 Stat. 4105 (1988), created this Court, permitting judicial review of decisions of the Board of Veterans' Appeals for the first time. In the same Act, Congress eliminated the $10 fee cap for attorneys representing veterans before the Court. This was the provision that was at issue in *Walters. See Veterans Benefits, Health Care, and Information Technology Act*, Pub. L. No. 109-461, § 101(c)(1)(A), 120 Stat. 3403, 3407 (2006) (now codified at 38 U.S.C. § 5904(c)(1)) (allowing attorneys to represent veterans at any time after a Notice of Disagreement has been filed).

7

emphasized that due process "is a flexible concept." 473 U.S. at 320; *see gen. Gambill*, 576 F.3d at 1313-24 (Bryson, J., concurring).

## B. The Implicit Denial Doctrine

A claim for VA benefits, whether formal or informal, remains pending until it is finally adjudicated. *See Adams v. Shinseki*, 568 F.3d 956, 960 (Fed. Cir. 2009); 38 C.F.R. § 3.160(c) (2010). A claim will also remain pending if VA has failed to notify the claimant of the denial of the claim. *Cook v. Principi*, 318 F.3d 1334, 1340 (Fed. Cir. 2002) (en banc). It is well established, however, that in certain circumstances, pursuant to the implicit denial doctrine, "a claim for benefits will be deemed to have been denied, and thus finally adjudicated, even if [VA] did not expressly address that claim in its decision." *Adams*, 568 F.3d at 961.

The implicit denial doctrine was first pronounced in *Deshotel v. Nicholson*, 457 F.3d 1258 (Fed. Cir. 2006). In that case, the Federal Circuit held that:

> Where the veteran files more than one claim with the [regional office] at the same time, and the [regional office]'s decision acts (favorably or unfavorably) on one of the claims but fails to specifically address the other claim, the second claim is deemed denied, and the appeal period begins to run.

*Id.* at 1261.

Shortly after the decision in *Deshotel* was issued, this Court interpreted the application of the implicit denial doctrine. In *Ingram v. Nicholson*, this Court held that "a reasonably raised claim remains pending until there is either a recognition of the substance of the claim in a [regional office] decision from which a claimant could deduce that the claim was adjudicated or an explicit adjudication of a subsequent 'claim' for the same disability." 21 Vet.App. 232, 243 (2007). In its opinion, the Court emphasized that it rejected a "broad, sweeping reading of *Deshotel* as supplanting the pending claim doctrine," and reiterated that a claimant must be able to reasonably deduce from the decision that the claim was denied. *Id.* at 246-47. Further, the Court noted that a broad reading of *Deshotel* "would run afoul of the due process concerns voiced by the en banc Federal Circuit in *Cook* and by this Court in *Thurber*." *Id.* at 250-51.

In *Williams v. Peake*, the Federal Circuit addressed "whether a finally adjudicated claim on a subsequent identical claim serves as a final adjudication of an earlier pending identical claim."

8

521 F.3d 1348, 1350 (Fed. Cir. 2008). Adopting this Court's holding in *Ingram*, the Federal Circuit held:

> We agree with the Veterans Court that a subsequent final adjudication of a claim which is identical to a pending claim that had not been finally adjudicated terminates the pending status of the earlier claim. The later disposition, denying the claim on its merits, also decides that the earlier identical claim must fail. The notice given that the later claim has been disallowed informs the veteran that his claim for service connection has failed. This notice affords the veteran the opportunity for appeal to the [Board], and if necessary to the Veterans Court and this court, so that he might demonstrate that his claim for service connection should have been sustained.

*Id.* at 1351.

The Federal Circuit again confronted the implicit denial doctrine in *Adams*. In that case, the appellant argued that this court misinterpreted the implicit denial doctrine. 568 F.3d at 958. Specifically, the appellant argued that because the claims involved in his appeal were not filed at the same time, the holding in *Deshotel* did not apply. *Id.* at 962. The Federal Circuit held that "in this instance, as in many others, the inverse of a true proposition is not necessarily true." *Id.* (citing *Capitol Records, Inc. v. Naxos of Am., Inc.,* 372 F.3d 471, 480 (2d Cir. 2004)). The Federal Circuit explained that the implicit denial doctrine, as outlined in *Deshotel* and *Ingram*, "reflects an appropriate balance between the interest in finality and the need to provide notice to veterans when their claims have been decided." *Id.* at 963. Further, and of direct importance to this case, the Federal Circuit held that the implicit denial doctrine did not itself violate an appellant's due process right to receive fair notice of the regional office's decision denying a claim for benefits. *Id.* at 964-65.

In *Munro v. Shinseki*, the Federal Circuit again elaborated on the implicit denial doctrine, holding that "the implicit denial rule may be applied to terminate the pending status of both formal and informal claims." 616 F.3d 1293, 1297 (Fed. Cir. 2010). The Federal Circuit reiterated that *Adams* clarified the notice requirements for the implicit denial doctrine and rejected the appellant's argument that a VA decision must expressly discuss a pending claim for it to be deemed denied. *Id.* at 1298. "[T]he proper notice standard is 'whether [a VA decision] provided sufficient information for a reasonable claimant to know that he would not be awarded benefits for his asserted disability.'" *Id.* at 1299 (quoting *Adams*, 568 F.3d at 963).

Most recently, the Federal Circuit reiterated these principles in *Jones v. Shinseki*, where it held that "under appropriate circumstances, a pending claim for benefits can be resolved by later adjudication of an identical claim or a related claim because the later decision provides sufficient notice to the claimant that the pending claim has been finally resolved." 619 F.3d 1368, 1372 (Fed. Cir. 2010). In that case, the Federal Circuit held that the implicit denial doctrine also applies when the subsequent adjudication is a Board, rather than a regional office, decision. *Id.* at 1373.

## C. Factors for Consideration

Given this caselaw, the Court finds that there are several factors that should be taken into consideration applying the implicit denial doctrine. The first factor to be considered is the specificity of the claims or the relatedness of the claims. For example, it is important to note whether the claimant is seeking benefits for a generalized set of symptoms, a specifically diagnosed disorder, or two (or more) specifically diagnosed disorders that are closely related. *See Clemons v. Shinseki*, 23 Vet.App. 1 (2009); *cf. Boggs v. Peake*, 520 F.3d 1330 (Fed. Cir. 2008); *see also Adams*, 568 F.3d at 963 (noting that the conditions for which the veteran sought VA benefits were closely related because rheumatic heart disease and bacterial endocarditis both affect heart valves and are frequently associated with each other); *Deshotel*, 457 F.3d at 1261-62 (the claimant was seeking service connection for two conditions that were closely related: a head injury and a psychiatric disability resulting from that head injury); *cf. Ingram*, 21 Vet.App. 247 (noting that the appellant's claim for VA benefits under 38 U.S.C. § 1151 was unrelated to his claim for non-service-connected pension benefits).

The second factor to consider is the specificity of the adjudication, i.e., does the adjudication allude to the pending claim in such a way that it could reasonably be inferred that the prior claim was denied? *See Adams*, 568 F.3d at 963 (finding that a Board decision that noted it reviewed *all* the medical reports and the affidavit, and concluded that the evidence did not disclose active rheumatic fever *or other cardiac pathology* during service, "'reasonably informed the appellant that a claim for *any* heart condition, including endocarditis, was denied'" (quoting *Adams v. Peake*, 2008 WL 2128005, slip op. at 6 (No. 06-0095, App. Feb. 20, 2008) (emphasis added)) and (finding the facts in *Deshotel* similar because "the regional office noted, when it granted [VA benefits] for a head injury, that the claimant's medical examination showed no evidence of psychiatric symptom[s]," and

10

"[u]nder those circumstances, a reasonable veteran would have known that his claim for disability compensation for a psychiatric disorder was denied"); *cf. Ingram*, 21 Vet.App. at 247-48 (finding that "when Mr. Ingram was informed that his claim for pension benefits was denied because his condition was 'not established as permanent,' he had no reason to know how a disability compensation claim based on section 1151 might have been decided by the regional office").

The third factor to consider is the timing of the claims. In *Adams*, the Federal Circuit stated that "[t]he timing of the claims is also highly significant." 568 F.3d at 964. For example, in *Deshotel*, the veteran filed more than one claim at the same time and the regional office decision adjudicated one claim but failed to specifically address the other. 457 F.3d at 1261. In *Adams,* the Federal Circuit explained that *Deshotel* "did not suggest that the implicit denial [doctrine] is limited to situations in which the veteran files multiple claims in a single application." 568 F.3d at 964. Although *Adams* filed the two claims six months apart, the Federal Circuit held that "the two claims were closely associated both in time and in the manner in which they were presented to [VA]." *Id.*

The fourth factor to consider is whether the claimant is represented. It is a well established principle that VA has a duty to sympathetically read a veteran's pleadings. "[I]n order to develop a claim 'to its optimum' as mandated by *Hodge* [*v. West*, 155 F.3d 1356, 1362 (Fed. Cir. 1998),] . . . VA must determine all potential claims reasonably raised by the evidence, applying all relevant laws and regulations." *Roberson v. Principi*, 251 F.3d 1378, 1384 (Fed. Cir. 2001). The requirement that VA sympathetically read a veteran's pleadings was qualified further in that the Federal Circuit held that it applies "with respect to all *pro se* pleadings." *Szemraj v. Principi*, 357 F.3d 1370, 1373 (Fed. Cir. 2004). This duty that VA sympathetically read the claim also applies when an appellant is represented, although representation may be a factor in determining the degree to which the pleading is liberally construed. *See Robinson v. Peake*, 21 Vet.App. 545, 554 (2008) ("The presence of [the appellant's attorney] throughout the appeals process before the Agency is a significant factor"); *but see Robinson v. Shinseki*, 557 F.3d 1355, 1360 (Fed. Cir. 2009) (affirming this Court's decision, but cautioning that representation by a lawyer *alone* would not permit a finding of waiver). In addition, because an attorney has a duty to provide competent representation to the client, including "the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation," the attorney must advise the appellant of any claim that was unadjudicated in a regional office decision,

and the possible consequences of not directly addressing the claim at the time of the original rating action.  MODEL RULE OF PROF'L CONDUCT R. 1.1 (2007).

D.  Applicability of Factors to Mr. Cogburn's Claim

First and foremost, the Court notes that the implicit denial doctrine, in and of itself, does not violate an appellant's due process rights.  *See Adams*, 568 F.3d at 964-965 ("Mr. Adams further contends that the Veteran's Court's application of the implicit denial rule violated his due process right to receive fair notice of the regional office's decision denying his claim for benefits.  We reject that argument.").  Additionally, Mr. Cogburn conceded this at oral argument and made clear that he was only challenging the implicit denial doctrine as it applied to him in this instance.  The essence of Mr. Cogburn's argument is that any finding that his 1974 claim was denied by the November 1985 Board decision would deny him his due process right to notice and an opportunity to be heard because, he argues, the 1985 Board decision did not discuss his 1974 claim in terms sufficient to put him on notice that when the Board denied benefits for post-traumatic stress disorder, it was also denying benefits for a severe nervous condition, diagnosed as depressive neurosis and schizophrenia.  Accordingly, the key question is whether Mr. Cogburn could reasonably deduce that his 1974 compensation claim and any informal claim for schizophrenia were denied by the November1985 Board decision and the prior adjudications associated with his June 1983 claim and, if so, whether this satisfied his due process rights.[4]

In the decision here on appeal, the January 28, 2008, Board decision, the Board noted the appellant's argument, in his October 2003 Notice of Disagreement, that an earlier effective date was warranted based upon "unadjudicated formal and informal claim[s] he submitted in 1974 and 1975" and that he "reiterated these claims at his personal hearing in June 2007."  R. at 8.  However, rather than address this argument, the Board summarily stated "[i]n this case, [Mr. Cogburn] has submitted no motion for reconsideration or [alleged clear and unmistakable error in the] November 1985 Board decision[,] *which effectively resolved any pending service connection claims for* [*post-traumatic stress disorder,*] and that determination is considered final."  R. at 8.

---

[4]In this regard, it is important to note that post-traumatic stress disorder was not recognized as a diagnosis by the American Psychiatric Association until January 1980.  *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 236 (3rd ed. 1980).  In addition, VA did not recognize post-traumatic stress disorder as a service-connectable disorder until 1980.  *See Fletcher v. Derwinski*, 1 Vet.App. 394, 395 (1991).

The Board's statement, however, reflects a misunderstanding of Mr. Cogburn's arguments below. Mr. Cogburn did not argue that he had a pending disability compensation claim for *post-traumatic stress disorder*. Instead, he asserted that his 1974 claim for a "*severe nervous condition*" and a 1975 informal claim were never addressed by the regional office and he requested that his claims be adjudicated as soon as possible. R. at 551-54. The regional office rejected that argument in its October 2002 rating decision and found that, "due to the close association between depressive neurosis and [post-traumatic stress disorder]," Mr. Cogburn's 1974 claim for a nervous condition was adjudicated in 1983 as a claim for post-traumatic stress disorder. R. at 475-78.

The record demonstrates that Mr. Cogburn initiated an appeal from the October 2002 rating decision by filing a Notice of Disagreement and a Substantive Appeal. The January 2008 Board decision, however, failed to review the October 2002 regional office determination that his 1974 claim was finally adjudicated. *See Jarrell v. Nicholson*, 20 Vet.App. 326, 331 (2006) (en banc) (noting that "[w]hen a claim is properly appealed to the Board, the Board is vested with the jurisdiction to *review* '[a]ll questions in a matter which under section 511(a) of [title 38] is subject to a decision of the Secretary'" (quoting 38 U.S.C. § 7104(a)); *cf Godfrey v. Brown*, 7 Vet.App. 398, 408-10 (1995) (Board lacks jurisdiction over claim not first presented to and adjudicated by the regional office). "'The Board is required to adjudicate all issues reasonably raised by a liberal reading of the appellant's substantive appeal, including all documents and oral testimony in the record prior to the Board's decision.'" *Beverly v. Nicholson*, 19 Vet.App. 394, 404 (2005) (quoting *Brannon v. West*, 12 Vet.App. 32, 34 (1998)). *See Barringer v. Peake*, 22 Vet.App. 242, 244 (2008) (holding that the Court has jurisdiction to review whether the Board erred in failing to address a reasonably raised claim). The Court therefore finds that it was error for the Board not to address Mr. Cogburn's disagreement with the regional office's refusal to adjudicate what Mr. Cogburn argued were pending claims.[5]

---

[5] In *DiCarlo v, Nicholson*, 20 Vet.App. 52, 56 (2006), we stated that the "appropriate procedure" for a claimant who believes that his claim is unadjudicated is to pursue resolution of the claim by the regional office. Here, the regional office refused to adjudicate Mr. Cogburn's claims because it determined that the claims were finally adjudicated in 1985. When Mr. Cogburn initiated an appeal from the regional office's decision that refused to adjudicate his claims, he was entitled to a Board decision on his appeal. *See also Beverly*, 19 Vet.App. at 404 ("[E]ven when there is no Board decision on a claim, we have jurisdiction over that claim if there is reference to it in [a Notice of Disagreement], or if it is reasonably raised to the Board.").

On remand, the Board must address Mr. Cogburn's contention that his 1974 claim for a severe nervous condition and a 1975 informal claim remain pending and unadjudicated. As part of its analysis, the Board may be required to consider whether (1) Mr. Cogburn filed more than one claim in 1974; (2) what claim(s) were adjudicated in 1974; (3) what disabilit(ies) Mr. Cogburn claimed in 1983, to include depressive neurosis, schizophrenia, and post-traumatic stress disorder; (4) whether the 1983 claim was for the same disability as the 1974 claim; and (5) what, specifically, was adjudicated in the 1985 decision? If the Board determines that any claims remained pending, the Board must also consider whether the implicit denial doctrine applies to those claims. The Board must adequately explain any determination that Mr. Cogburn's claims were implicitly denied by the Board's November 1985 decision and, in doing so, the Board must address each of the factors outlined below.

## 1. Relatedness of Claims

The first factor to consider in the implicit denial analysis is whether Mr. Cogburn's November 1974 claim and his June 1983 claim are identical or related claims. The Court notes that on both applications, Mr. Cogburn referred to a "nervous condition," but that his June 1983 claim was termed and developed by VA as a claim for the strict disability of post-traumatic stress disorder. The requirement that a claimant identify the benefit sought means that the claimant must describe the nature of the disability for which he is seeking benefits. *Ingram*, 21 Vet.App. at 256. A claimant may satisfy this requirement by referring to a body part or system that is disabled or by describing symptoms of a disability. *See Clemons,* 23 Vet.App. at 5 (stating that when determining the scope of a claim, the Board must consider "the claimant's description of the claim; the symptoms the claimant describes; and the information the claimant submits or that the Secretary obtains in support of the claim"); 38 C.F.R. § 3.159(c)(3) (2010); *see also* R. at 912 (VA Form 21-526, Veteran's Application for Compensation and Pension, Block 24 instructing appellant to provide the "*NATURE* OF SICKNESS, DISEASE OR INJURIES FOR WHICH THIS CLAIM IS MADE") (emphasis added); *cf Boggs*, 520 F.3d at 1330 (holding that claims based on separate and distinctly diagnosed conditions must be considered separate and distinct claims for purposes of VA benefits); *Velez v. Shinseki*, 23 Vet.App. 199, 203 (2009) (holding that, in the context of reopening, a claim for a

14

nervous condition was not a new claim based on a distinctly diagnosed condition from a previously adjudicated claim for a stress disorder).

Here, because the Board did not address Mr. Cogburn's argument that his 1974 claim remained pending and unadjudicated, the Board did not make any findings as to whether the November 1974 and June 1983 claims were identical or closely related. Accordingly, on remand, the Board should determine whether the implicit denial doctrine applies to Mr. Cogburn's claim and, if so, whether his November 1974 and June 1983 claims are identical or related. *See Clemons*, 23 Vet.App. at 5.

## 2. Specificity of Adjudication

The second factor to consider in Mr. Cogburn's case is whether a reasonable person could infer that the prior 1974 claim for a severe nervous condition and any informal claim for schizophrenia were denied by the November 1985 Board decision and the prior adjudications associated with the June 1983 claim. In the context of Mr. Cogburn's appeal, the Board must consider that he filed a claim for a nervous disorder, submitted treatment records showing a diagnosis of schizophrenia, received a rating decision denying compensation benefits for post-traumatic stress disorder, continued his appeal for post-traumatic stress disorder, and received a Board decision that denied benefits based on legal criteria unique to post-traumatic stress disorder, i.e. the absence of a recognizable stressor, while also suggesting that the preponderance of the evidence showed that the appellant most likely suffered from schizophrenia.

The Court reminds the Board that the standard to be applied when analyzing the specificity of an adjudication in an implicit denial doctrine analysis is that of a reasonable person.

> The reasonable man connotes a person whose notions and standards of behavior and responsibility correspond with those generally obtained among ordinary people in our society at the present time, who seldom allows his emotions to overbear his reason and whose habits are moderate and whose disposition is equable. He is not necessarily the same as the average man–a term which implies an amalgamation of counter-balancing extremes.

BLACK'S LAW DICTIONARY 1380 (9th ed. 2009) (quoting R.F.V. Heuston, SALMOND ON THE LAW OF TORTS 56 (17th ed. 1977)); *see also Adams*, 568 F.3d at 963 (discussing this Court's holding in *Ingram*, and stating that in applying the implicit denial doctrine, the Court must "determine whether

15

[VA] provided sufficient information for a *reasonable* claimant to know that he would not be awarded benefits for his asserted disability" (emphasis added)); *id.* at 964 ("[T]he key question in the implicit denial inquiry is whether it would be clear to a *reasonable person* that [VA]'s action that expressly refers to one claim is intended to dispose of others as well." (emphasis added)); *see also Ingram*, 21 Vet.App. at 243.

Accordingly, on remand, the Board must determine whether a reasonable person would have been put on notice that his 1974 claim for a "severe nervous condition" and any informal claim for schizophrenia were adjudicated by the November 1985 Board decision that denied compensation benefits for "post-traumatic stress disorder."

### 3. Timing of Claims

As noted above, the Federal Circuit has stated that the timing of claims is "highly significant" to an implicit denial doctrine analysis. The timing of the claims in Mr. Cogburn's case is distinguishable from the timing of the claims filed in *Adams* and *Deshotel*. In *Deshotel*, the two claims in question were filed simultaneously, whereas in *Adams*, the two claims were filed only six months apart. Here, Mr. Cogburn first filed claims for VA compensation and pension benefits in 1974. Both the compensation and pension claims were filed at the same time, and on the same claim form, i.e., in a single application. As noted above, the pension claim was explicitly adjudicated in March 1975. There is a span of approximately nine years between when Mr. Cogburn first filed his claim for a nervous condition in 1974 and when he filed another claim for a nervous disorder in June 1983. It is therefore unclear whether this nine-year gap would allow for Mr. Cogburn to reasonably determine that his 1974 compensation claim was implicitly denied by the adjudication of his subsequent claim, especially given that there were several psychiatric diagnoses noted in the record.

The Board does not discuss the timing of the claims in its decision. On remand, therefore, the Board must weigh the nine year-span between the filing of the two claims in this case, in addition to the other factors discussed herein.

### 4. Representation

Finally, the Court notes that the Board also did not make any findings of fact as to how Mr. Cogburn's representation affected his appeal or the prior adjudications of his claims. The Court observes that at the time of his November 1974 claim, Mr. Cogburn was represented by the Disabled

American Veterans. At the time of his June 1983 claim, Mr. Cogburn was represented by the Veterans of Foreign Wars, and the Veterans of Foreign Wars continued to represent Mr. Cogburn before the Board. When Mr. Cogburn reopened his claim for post-traumatic stress disorder in October 1991, he was represented by the Arizona Veterans Service Commission. Mr. Cogburn was then represented by the American Legion, who represented him during his June 2007 Board hearing and at the time of the January 2008 Board decision. These are all veterans service organizations, and there is no indication that Mr. Cogburn was represented by an attorney at any point prior to his appeal to this Court. *See Comer v. Peake*, 552 F.3d 1362, 1369 (Fed. Cir. 2009) (holding that "representation by an organizational aide is not equivalent to representation by a licensed attorney. Although aides from veterans' service organizations provide invaluable assistance to claimants . . . they are 'not generally trained or licensed in the practice of law.'" (quoting *Cook v. Brown*, 68 F.3d 447, 451 (Fed. Cir. 1995))). Although representation by an attorney is but one factor to be considered during an implicit denial doctrine analysis, it nevertheless plays a role in determining the degree to which a pleading will be liberally construed. *See Robinson,* 21 Vet.App. at 554. To this end, whether a claimant is represented is particularly relevant to what disability was initially claimed and how any decision based on the implicit denial doctrine is interpreted.

Accordingly, in its analysis on remand, the Board should account for the fact that Mr. Cogburn was represented by organizational aides prior to his appeal to this Court.

### E. Summary

In summary, the Court concludes that the implicit denial doctrine does not violate a claimant's constitutional rights. In analyzing the applicability of the implicit denial doctrine to a particular claim, the Board must look to several factors, including the relatedness of claims, the specificity of the adjudication, the timing of the claims, and whether the claimant was represented at the time the claims were filed.

In this case, the Board did not discuss the applicability of the implicit denial doctrine and therefore did not discuss any of the factors outlined in this decision. To the contrary, the Board analyzed Mr. Cogburn's claim as a claim for an earlier effective date–a characterization Mr. Cogburn has repeatedly disagreed with throughout the adjudication of his current appeal. The Board found that Mr. Cogburn was not entitled to an earlier effective date pursuant to this Court's holding in *Rudd*

17

*v. Nicholson*, 20 Vet.App. 296 (2006). Although the Board recited the law that applies to the implicit denial doctrine analysis in its section on pertinent laws and regulations, the Board made no explicit findings of fact regarding whether the doctrine applied in this case. Accordingly, because of the factual nature of the implicit denial doctrine assertions on appeal, the Court must remand this case to the Board to make the proper factual determinations concerning the implicit denial doctrine in the first instance and to readjudicate the matter based on those factual findings. *See Webster v. Derwinski*, 1 Vet.App. 155, 159 (1991) (the Court is not to conduct de novo factfinding but rather is to remand to the Board to find facts in the first instance, subject to later review by the Court); *see also Hensley v. West*, 212 F.3d 1255, 1263-64 (Fed. Cir. 2000) (explaining that the Supreme Court has held that when a court of appeals reviews a lower court's decision, it may remand it if the previous adjudicator failed to make findings of fact essential to the decision); *Tucker v. West,* 11 Vet.App. 369, 374 (1998) (remand is the appropriate remedy "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate").

## III. CONCLUSION

Upon consideration of the foregoing, the January 28, 2008, Board decision is VACATED and the matter is REMANDED for further adjudication consistent with this decision.

SCHOELEN, *Judge*, concurring: Although I agree with the majority's ultimate holding, I respectfully dissent from that part of the decision that includes representation by counsel as a factor to consider when determining whether a claim has been implicitly denied.

In the context of implicit denials, the majority finds that whether a claimant is represented is particularly relevant at two, separate and distinct, times during the claims process. First, they state that it is relevant to determining "what disability is claimed" – presumably because an attorney has the legal experience and knowledge to effectively communicate a request for entitlement to a specific benefit. *Ante* at 17. Second, they state that it is relevant to "how any decision based on the implicit denial analysis is interpreted." *Ante* at 17. Here, they rely on an attorney's ethical obligation to provide competent representation to his client.

18

Undoubtedly, representation by counsel can be an invaluable asset to the unsophisticated lay-claimant who may not understand the labyrinths of VA's adjudication system. One would expect the added benefit of more precise pleadings, succinct legal arguments, and a greater understanding of the agency's adjudication of the claim and the appellate process. However, while the presence of counsel can positively influence a claim's processing and the claimant's understanding of VA's decision on the claim, I do not believe that there is any basis in law for finding the presence of counsel to alleviate, or alter the scope of, VA's obligations to a claimant.

VA's duty to liberally construe and sympathetically read a veteran's pleadings generally applies equally to represented and unrepresented claimants. I respectfully submit that the majority erroneously attempts to draw a distinction between represented and unrepresented claimants by stating that the presence of counsel "may be a factor in determining the *degree* to which the pleading is liberally construed." *Ante* at 11 (citing *Robinson v. Peake*, 21 Vet.App. 545, 554 (2008)) (emphasis added). However, on review, the Federal Circuit flatly rejected this notion in *Robinson v. Shinseki,* 557 F.3d 1355, 1360 (Fed. Cir. 2009), when it explained that "it would defeat the congressional purpose of increasing the much needed attorney assistance if direct appeal attorney filings were read in a less sympathetic light than pro se filings." *See also Comer v. Peake*, 552 F.3d 1362, 1370 (Fed. Cir. 2009) ("To hold that a veteran forfeits his right to have his claims read sympathetically if he seeks assistance . . . would be to discourage veterans from seeking the much-needed assistance."); *Robinson v. Peake,* 21 Vet.App. at 564 (Schoelen, J., dissenting) (stating that "the majority's artificial distinction between represented and unrepresented claimants . . impede[s] 'Congress's clear desire to create a framework conducive to efficient claim adjudication.'" (quoting *Sanders v. Nicholson*, 487 F.3d 881, 889 (Fed. Cir. 2007), *rev'd on other grounds sub nom. Shinseki v. Sanders*, 129 S.Ct. 1696 (2009))). The Federal Circuit clearly held that "the veteran's efforts to raise issues on direct appeal should be liberally construed whether or not the veteran is represented by counsel." *Robinson*, 557 F.3d at 1362; *see also Roberson v. Principi*, 251 F3d. 1381, 1384 (Fed. Cir. 2001) (VA is obligated to "determine all potential claims raised by the evidence"); *but see Andrews v. Nicholson*, 421 F.3d 1278 (Fed. Cir. 2005) (holding that the duty to liberally read pleadings does not apply to filings by counsel alleging clear and unmistakable error).

I recognize that common sense dictates that represented claimants are more likely to understand from VA's decision that a claim has been implicitly denied. However, my esteemed colleagues fail to cite any authority to support the notion that *notice* of a decision may be *lessened* if the claimant is represented nor do they explain how VA would satisfy its obligation to provide notice of a decision to a represented claimant. "An elementary and fundamental requirement of due process in any proceeding . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Although there are circumstances that require *enhanced* due process protections beyond what is ordinarily expected, I am not aware of any case law that permits *less* solely because a party is represented. *See Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 799 (1983) ("[A] party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation."); *Mullane,* 339 U.S. at 319-20 ("In some situations the law requires greater precautions in its proceedings than the business world accepts for its own purposes. In few, if any, will it be satisfied with less."); *see also Jones v. Flowers*, 547 U.S. 200, 221 (2006) ("[T]he constitutionality of a particular notice procedure is assessed *ex ante*, not *post hoc*."); *Covey v. Town of Somers*, 351 U.S. 141, 147 (1956) (compliance with statutory notice requirements found insufficient in the case of a person known to be incompetent who is without the protection of a guardian). Moreover, the majority does not explain what standard should be adopted – if not the reasonable person standard – when assessing whether VA has provided adequate notice of a decision. Just how cryptic can VA's decision be and still satisfy the "reasonable claimant" standard?

Finally, the majority provides no explanation for expanding upon the Federal Circuit's decision in *Adams v. Shinseki*, which clearly identified three factors to consider when determining whether it would be clear to a *reasonable person* that an adjudication that expressly addresses one claim implicitly denied another: (1) the language of the decisions and the description of the evidence considered in the VA adjudication, (2) the relatedness of the claims, and (3) the timing of the claims. 568 F.3d 956, 963-64 (Fed. Cir. 2009). The Federal Circuit did not consider whether the appellant was represented by counsel in determining whether the appellant received fair *notice* of a VA decision and the majority provides no basis for injecting an additional factor into the analysis.

20

Therefore, although I concur with the majority's decision, I cannot agree with its inclusion of representation by counsel as a factor to consider when determining whether a claim has been implicitly denied.