Citation Nr: 1546218 
Decision Date: 10/30/15 Archive Date: 11/10/15

DOCKET NO. 08-01 630 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Lincoln, Nebraska


THE ISSUES

1. Entitlement to an effective date prior to August 22, 2007 for the award of service connection for radiculopathy in the right lower extremity as secondary to service-connected lumbar spine disability. 

2. Entitlement to an effective date prior to August 22, 2007 for the award of service connection for radiculopathy in the left lower extremity as secondary to service-connected lumbar spine disability.

3. Entitlement to an effective date prior to May 4, 2009 for the award of service connection for coronary artery disease (CAD).

4. Entitlement to evaluation in excess of 10 percent prior to December 31, 2012, and thereafter in excess of 20 percent for lumbar spine disability. 

5. Entitlement to an initial compensable evaluation prior to August 2, 2010, an evaluation in excess of 10 percent from August 2, 2010 to December 30, 2012, and thereafter an evaluation in excess of 30 percent for disability due to radiculopathy in the left lower extremity. 

6. Entitlement to an initial compensable evaluation prior to August 2, 2010, an evaluation in excess of 10 percent from August 2, 2010 to December 30, 2012, and thereafter an evaluation in excess of 30 percent for disability due to radiculopathy in the right lower extremity.

7. Entitlement to an evaluation in excess of 10 percent for posttraumatic stress disorder (PTSD). 

8. Entitlement to an evaluation in excess of 10 percent prior to October 16, 2013, and thereafter in excess of 60 percent for CAD. 

9. Entitlement to a total disability rating due to individual unemployability (TDIU). 


REPRESENTATION

Appellant represented by: Mr. John S. Berry, Attorney at Law 


ATTORNEY FOR THE BOARD

J. Murray, Counsel 



INTRODUCTION

The Veteran served on active duty in the United States Marine Corps from July 1965 to February 1969. 

These matters come on appeal before the Board of Veterans' Appeals from various rating decisions by the Department of Veterans Affairs, Regional Office located in Lincoln, Nebraska (RO). 

The Veteran's claim for increased rating for lumbar spine disorder originally arose from an October 2007 rating decision, in which the RO denied a rating in excess of 10 percent. The Veteran perfected an appeal to the Board, which denied the Veteran's claim, most recently in March 2010. The Veteran appealed the Board's decision to the United States Court of Appeals for Veterans Claims (Court). In a November 2011 memorandum decision, the Court vacated the Board's decision as to the Veteran's lumbar spine claim and remanded the claim for re-adjudication. The Board remanded the matter in July 2012 for additional development. 

In a June 2013 rating decision, the RO awarded service connection for radiculopathy in the right and left lower extremities and assigned noncompensable ratings from August 22, 2007, 10 percent ratings effective from August 2, 2010, and 20 percent ratings from December 31, 2012. The Veteran appealed the assigned effective date for initial awards as well as the assigned ratings. 

In a November 2013 rating decision, the RO awarded service connection for CAD and assigned a 10 percent rating from May 4, 2009 and a 60 percent rating from October 16, 2013, and the RO denied the claims for increased rating for PTSD and for TDIU. The Veteran appealed the assigned effective date and ratings for his CAD disability as well as the denial of a higher rating for his PTSD and entitlement to TDIU. 

During the pendency of the last remand, this appeal was converted to and processed using the Veterans Benefits Management System (VBMS) paperless claims processing system. Accordingly, any future consideration of this appellant's case should take into consideration the existence of this electronic record.

The issues of entitlement to increased ratings for his service-connected lumbar spine disability, radiculopathy in the right and left lower extremities, PTSD, and CAD are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. VA medical evidence of record likely reflects that the Veteran had radiculopathy in his lower extremities associated with his lumbar spine disability since December 1999. 

2. VA received the Veteran's claim for increased rating for lumbar spine disability, to include associated neurologic involvement in both lower extremities, on July 30, 2007. 

3. The Veteran met all eligibility criteria for entitlement to service connection for CAD on July 3, 2007, the date of informal claim recognized under the liberalizing law issued by VA for presumptive herbicide exposure. Such eligibility existed continuously from July 3, 2007 to May 4, 2009.


CONCLUSIONS OF LAW

1. Entitlement to an effective date of July 30, 2006, and not earlier, is warranted for the award of service connection for radiculopathy in the right lower extremity as secondary to service-connected lumbar spine disability, have been met. 38 U.S.C.A. §§ 5101, 5110 (West 2014); 38 C.F.R. §§ 3.114(a), 3.151, 3.155, 3.400 (2015)

2. Entitlement to an effective date of July 30, 2006, and not earlier, is warranted for the award of service connection for radiculopathy in the left lower extremity as secondary to service-connected lumbar spine disability, have been met. 38 U.S.C.A. §§ 5101, 5110 (West 2014); 38 C.F.R. §§ 3.114(a), 3.151, 3.155, 3.400 (2015)

3. Entitlement to an effective date of July 3, 2007, and not earlier, is warranted for the award of service connection for coronary artery disease. 38 U.S.C.A. §§ 5101, 5110 (West 2014); 38 C.F.R. §§ 3.114(a), 3.151, 3.155, 3.400, 3.816 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

1. VA's Duty to Notify and Assist 

The VCAA, in part, describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). 

As the rating decisions on appeal granted service connection and assigned disability ratings and effective date for the awards, statutory notice had served its purpose, and additional notice is not required. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006), aff'd, Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007). August 2014 statement of the cases (SOCs) properly provided notice on the "downstream" issue of entitlement to an earlier effective date for the award and readjudicated the matter. 38 U.S.C.A. § 7105; see Mayfield v. Nicholson, 20 Vet. App. 537, 542 (2006). The Veteran has had ample opportunity to respond/supplement the record, and has not alleged that notice was less than adequate. See Goodwin v. Peake, 22 Vet. App. 128, 137 (2008) ("where a claim has been substantiated after the enactment of the VCAA, the appellant bears the burden of demonstrating any prejudice from defective VCAA notice with respect to the downstream issues"); see also Shinseki v. Sanders, 129 S. Ct. 1696 (2009) (discussing the rule of prejudicial error). 

 All evidence relevant to the matter at hand has been secured. Notably, determinations regarding effective dates of awards are based essentially on what is already in the record, and when it was received, and generally further development of the record is not necessary. The Board finds that no further assistance to the Veteran in developing the facts pertinent to the claim is required to comply with VA's duty to assist. He has not identified any pertinent evidence that is outstanding.

2. Earlier Effective Date

Generally, the effective date for a grant of service connection is the date of receipt of the claim or date entitlement arose, whichever is later. 38 U.S.C.A. § 5110(a); 38 C.F.R. § 3.400.

The effective date of an evaluation and award of compensation on an original claim for compensation will be the day following separation from active duty service or the date entitlement arose if the claim is received within one year after separation from service. Otherwise, the effective date will be the date of receipt of the claim or the date entitlement arose, whichever is later. 38 U.S.C.A. § 5110(a)-(b)(1); 38 C.F.R. § 3.400(b)(2).

Except as otherwise provided, the effective date of an evaluation and award of a claim for increased disability rating will be the date of the receipt of the claim or the date entitlement arose, whichever is the later. 38 C.F.R. § 3.400. If a claim for increased disability rating is received within one year from the earliest date as of which it is factually ascertainable that an increase in disability had occurred, then that date shall be the effective date; otherwise, it will be the date on which the claim was received. 38 C.F.R. § 3.400(o)(2).

A claim is a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement to a benefit. 38 C.F.R. § 3.1(p).


Bilateral Radiculopathy as Secondary to Lumbar Spine Disability 

The Veteran is seeking entitlement to an effective date earlier for the grant of entitlement to service connection for radiculopathy of the bilateral lower extremities. In this case, the Veteran's separate evaluations for bilateral lower extremity radiculopathy were assigned on August 22, 2007 - the date of VA examination report which the RO deemed as the first ascertainable evidence of the bilateral radiculopathy disability.

In a February 2015 brief, the Veteran's representative argues that an October 4, 1999 medical statement from a private physician for Compensation and Pension Services Examination indicates the first medical evidence of radiculopathy associated with the Veteran's service-connected lumbar spine disability. The October 1999 reports shows that the Veteran complained of bilateral leg pain associated with his back problems. In a December 4, 1999 addendum statement from Dr. D.W. S., after review of x-ray and MRI reports, he found that the Veteran's ongoing back problems involved disc herniation and bulging that resulted in "definite impingement on the sac which contains the nerve roots" and likely source of the Veteran's leg pain, despite lack of neurologic deficits revealed on clinical evaluation. He further noted that VA recognized as much in the May 2000 rating decision. 

The Veteran's representative asserts that while the 1999 medial opinion does not provide a clear diagnosis of radiculopathy, it triggered VA's duty to sympathetically develop Veteran's claim for back condition and consider radiculopathy as a secondary claim. He therefore argues that VA was accordingly on notice that the Veteran experience radicular symptoms that receipt of such should have been construed as a claim, and that entitlement to service connection for bilateral lumbar radiculopathy should be granted effective from the initial rating for the Veteran's lumbar spine disability.

The Board notes that neurological disabilities associated with the Veteran's lumbar spine disability are to be separately evaluated under the appropriate diagnostic codes under the Rating Schedule for thoracolumbar spine disabilities. See 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine, Note (1). The Board notes that since the Veteran's last adjudication of his lumbar spine disability evaluation in February 2002, the Rating Schedule was changed in September 2003 to require that neurological disabilities associated with thoracolumbar spine disabilities are specifically considered and separately rated. Prior to the 2003 amendments, the rating criteria for rating lumbar spine disabilities included neurologic impairment. Thus, under the law in effect at that time, the Board finds that the RO acted appropriately in treating that evidence as relevant to the then-pending claim of service connection for lumbar spine disability, rather than as raising a separate claim of entitlement to service connection on a secondary basis. Significantly, the RO subsequently awarded service connection for a lumbar spine disability, but denied an evaluation in excess of 10 percent, noting that VA examination had failed to reveal any obvious neurological defects.

Based on this evidence, the Board finds that when viewed in the light most favorable to the Veteran, it is factually ascertainable that he had symptoms consistent bilateral lower extremity radiculopathy disabilities on December 4, 1999. Although the medical evidence lacks objective findings of neurologic involvement in the bilateral lower extremities associated with the lumbar spine disability since December 1999, the Veteran has competently and credibility complained of a history recurrent symptoms of radiating pain down his lower extremities at the time of August 2007 VA examination. 

As noted above, the effective date for an increased rating for disability compensation will be the earliest date as of which it is factually ascertainable that an increase in disability occurred if a claim is received within one-year from such date; otherwise, the effective date is the date of receipt of the claim. 38 U.S.C.A. § 5110(b)(2); 38 C.F.R. § 3.400(o)(2). 

In this case, the RO granted separate compensable evaluations for lumbar radiculopathy of the left and right lower extremities in June 2013 as a manifestation of the service connected degenerative disc disease of the lumbar spine. 

This award following an informal claim for increased rating for lumbar spine disability in July 2007. To the extent that the issue of whether separate ratings are warranted for neurological manifestations of a spine disability, as specifically contemplated by the current rating criteria for the spine, the date the Veteran's "claim" for radiculopathy was received was July 30, 2007. The record does not reflect that the Veteran submitted a document with the intent to file a claim for increased rating after the date of an unappealed February 2002 rating decision and prior to the date of the July 2007 claim for increased rating. As such, July 30, 2007 is considered the date of claim for bilateral radiculopathy as secondary to lumbar spine disability. 

As noted, if it is factually ascertainable that an increase in disability occurred one-year prior to July 30, 2007, the date of the claim for increase, on which VA may award separate evaluations for bilateral lower extremity radiculopathy in this case as of July 30, 2006. See 38 C.F.R. § 3.102, 3.400(o). As noted, although the medical evidence lacks objective findings of neurologic involvement in the bilateral lower extremities associated with the lumbar spine disability since December 1999, the Veteran has competently and credibility complained of a history recurrent symptoms of radiating pain down his lower extremities at the time of August 2007 VA examination. Therefore, having resolved doubt in favor of the Veteran, the Board finds that an effective date of July 30, 2006, is warranted.

With respect to the Veteran's representative's assertion that an implicit claim for service connection for bilateral radiculopathy was pending since the 1999 examination, he Board again observes that the rating schedule did not provide for separate ratings for neurological disabilities at that time and the 1999 findings were considered as part of the lumbar spine disability and a higher evaluation based on neurological manifestations was specifically denied in the May 2000 rating decision. See, e.g., Ingram v. Nicholson, 21 Vet. App. 232 (2007); Jones v. Shinseki, 619 F.3d. 1368 (2010); Cogburn v. Shinseki, 24 Vet. App. 205 (2010). The Veteran did not appeal the May 2000 or the February 2002 rating decisions, and those decisions are final. 38 U.S.C.A. § 7105; 38 C.F.R. § 20.1103. 

Coronary Artery Disease (CAD)

The Veteran seeks an earlier effective date for the award of service connection for coronary artery disease (CAD). In a February 2015 correspondence, the Veteran's representative asserts that the Veteran was entitled to an effective date of October 6, 2005, the date of a VA treatment record that reflects a diagnosis of CAD. He cited Nehmer v. United States Veterans Administration, 284 F.3d 158, 1161 (9th Cir. 2002) (Nehmer III) to support his contention. The Veteran's representative asserts that the Veteran had a pending claim at the time he was first diagnosed with CAD, or since VA treatment records reflect diagnosis in October 6, 2005. In the alternative, the Veteran's representative asserts an effective date of July 3, 2007, the date which VA concedes his claim for service connection was received, should be assigned based on the clear diagnosis of CAD since October 2005. 

It is noted that a rating decision awarded service connection for CAD (presumptive to herbicide exposure), effective from May 4, 2009. The effective date of the award was predicated on the receipt of private medical evidence that demonstrated that the Veteran was being treated for CAD. The RO accepted this as the first medical evidence of CAD to support an award of service connection since an informal claim for benefits received on July 3, 2007. See August 2014 Statement of the Case (SOC). 

The Veteran's claim for service connection CAD was granted pursuant a liberalizing law. Effective August 31, 2010, VA added ischemic heart disease, to include CAD, to the list of presumptive diseases associated with herbicide exposure. 75 Fed. Reg. 53,216 (Aug. 31, 2010); 38 C.F.R. § 3.309(e).

In cases involving presumptive service connection due to herbicide exposure, there is an exception to the provisions set forth above. Following a 2002 decision of the United States Court of Appeals for the Ninth Circuit, VA established regulations pertaining to effective dates for service connection for diseases based on herbicide exposure. Nehmer, 284 F.3d at 1161. 

It was noted in the Federal Register that VA may pay benefits for periods prior to the effective date in certain circumstances which are set forth in detail in 38 C.F.R. § 3.816(c) and (d), which implement a stipulation and various court orders in the Nehmer class action litigation. 75 Fed. Reg. 53,216 (Aug. 31, 2010). The Board notes that 38 C.F.R. § 3.816 was revised to include ischemic heart disease as a covered herbicide disease. 78 Fed. Reg. 54,766 (Sept. 6, 2013).

Certain effective dates apply if a Nehmer class member was denied compensation for a covered herbicide disease between September 25, 1985, and May 3, 1989; or if there was a claim for benefits pending before VA between May 3, 1989, and the effective date of the applicable liberalizing law. See 38 C.F.R. § 3.816(c)(1)-(3). 

Under 38 C.F.R. § 3.816(c)(2), if the class member's claim was received between May 3, 1989 and the effective date of the liberalizing law, the effective date of the award will be the later of the date such claim was received by VA or the date the disability arose, except as provided in paragraph (c)(3) of this section. See 38 C.F.R. § 3.816(c)(2). Paragraph (c)(3) provides that if the class member's claim was received within one year of his or her separation from service, the effective date of the award shall be the day following the date of separation from active service. 

A claim will be considered a claim for compensation if the claimant's application or other supporting statements and submissions may reasonably be viewed, under the standards ordinarily governing compensation claims, as indicating an intent to apply for compensation for the covered herbicide disability; or VA issued a decision on the claim between May 3, 1989 and the effective date of the statute or regulation establishing a presumption of service connection for the covered disease, in which VA denied compensation for a disease that reasonably may be construed as the same covered herbicide disease for which compensation has been awarded. See 38 C.F.R. § 3.816(c).

The Veteran's VA treatment records reflect a diagnosis of CAD, stable, in October 2005.

Ischemic heart disease was added to the list of disorders for which service connection may be granted on a presumptive basis for Veterans exposed to Agent Orange during service effective August 31, 2010. 

VA conceded that a claim of service connection for CAD from the Veteran was received by VA on July 3, 2007. See August 2014 SOC. However, the rating decision on appeal awarded him service connection for CAD effective from May 4, 2009, which the RO identified as the date of the first medical evidence showing a diagnosis of CAD. As noted above, the VA medical evidence actually shows that the Veteran had a diagnosis of CAD in October 2005. As such, July 3, 2007, the date of claim, is the effective date of the award of service connection in accordance with the liberalizing provisions under Nehmer. See 38 C.F.R. § 3.816(c)(2). 

The Board has considered the Veteran's assertion that he is entitled to an effective date of October 6, 2005, the date his VA treatment records reflect his diagnosis of CAD. He cited Nehmer to support his contention. 

The dispositive fact in this matter is the date when VA concedes that the Veteran first filed a claim seeking service connection for CAD. VA has identified July 3, 2007 as the date of the Veteran's claim for service connection for CAD. The record does not show that he had a pending claim of service connection for CAD between May 1989 and July 3, 2007. The record also does not show that the Veteran had a claim of service connection for CAD denied between September 1985 and May 1989. Furthermore, his claim was received decades (and not within a year) following his separation from service. Consequently, the other liberalizing provisions under Nehmer do not apply in the instant case. 

Although VA treatment records show that the Veteran had a diagnosis of CAD as early as October 2005 (as asserted), the VA treatment record does not qualify as an informal claim for service connection, as it does not identify service connection for CAD as a benefit sought. The effective date of an award of service connection is not based on the earliest medical evidence showing a diagnosis of the disability, but on the date that the application upon which service connection was eventually awarded was filed with VA. Lalonde v. West, 12 Vet. App. 377, 382 (1999). Notably, in the Veteran's representative's correspondence received in February 2015, he acknowledged that he did not file a claim of service connection for CAD prior to July 3, 2007. 

The Board is bound by governing law and regulations, and has no authority to awards benefits not authorized by the governing law. Because the Veteran is not shown to have filed a formal or informal application for service connection for CAD prior to July 3, 2007, VA is precluded from granting an effective date for the award of service connection for CAD prior to July 3, 2007. An effective date of July 3, 2007, and not earlier, is warranted in accordance liberalizing provisions under Nehmer. See 38 C.F.R. § 3.816(c)(2).


ORDER

Entitlement to an effective date of July 30, 2006, and not earlier, for the award of service connection for radiculopathy in the right lower extremity as secondary to service-connected lumbar spine disability, is granted.

Entitlement to an effective date of July 30, 2006, and not earlier, for the award of service connection for radiculopathy in the left lower extremity as secondary to service-connected lumbar spine disability, is granted.

Entitlement to an effective date of July 3, 2007, and not earlier, for the award of service connection for coronary artery disease, is granted.



REMAND

The Veteran seeks entitlement to increased ratings for his service-connected lumbar spine disability, radiculopathy in the right and left lower extremities, PTSD, and CAD. Based on a review of the claims folder, the Board finds that the claims are not ready for adjudication. 

Initially, the Board notes that a review of the Veteran's paperless claims folder reflects that additional VA treatment records dated through May 2015 have been associated with the record since his claims were last adjudicated in August 2014 supplemental statements of the case (SOCs). These records are relevant to the Veteran's increased rating claims for CAD and PTSD. Such evidence is pertinent to the issues on appeal, and it is has not yet been reviewed by the Agency of Original Jurisdiction. See 38 C.F.R. §§ 20.800, 20.1304(c).

A remand is also needed in order to provide the Veteran with new VA examinations to evaluate the severity of his service-connected CAD and radiculopathy in both lower extremities. Notably, the Veteran claimed that his bilateral leg disability had worsened in November 2013 and the additional VA treatment records reflect that the Veteran's CAD disability had worsen to where surgery was recommended in March 2015. 

In addition, a remand is needed to ensure that the Veteran is afforded an adequate VA examination in conjunction with his service-connected lumbar spine disability. The Veteran was afforded with VA spine examination in December 2012, but the examiner failed to adequately address the Veteran's disability and associated functional impairment during flare-ups. An addendum medical statement was obtained in March 2013 that addressed issue of additional limitation of movement after repetitive use. However, in a May 2013 supplemental VA medical opinion report, a different VA examiner stated that he was unable to provide an opinion on the Veteran's functional loss due to his lumbar spine disability in terms of additional range-of-motion loss without examining the Veteran in person. As such, on remand, the Veteran should be afforded a new VA examination to evaluate the severity of his lumbar spine disability that includes a discussion of functional impairment as result of his disability. 

With respect to the Veteran's TDIU claim, the Board finds that the record does not contain sufficient evidence to determine whether the Veteran is unable to work as result of the functional impairment associated with his service-connected disabilities as opposed to his non-service connected cerebrovascular accident (CVA). Given the number of the Veteran's service-connected disabilities, a current VA examination is warranted to determine functional impairment from the service-connected disabilities as opposed to his non-service connected disabilities.

Accordingly, the case is REMANDED for the following action:

1. Update the claims folder with the VA treatment records since May 2015. 
 
2. Schedule the Veteran for a VA examination or examinations to determine the severity of his service-connected lumbar spine, radiculopathy in both lower extremities, and CAD, as well as to determine the functional impairments of service-connected disabilities. The claims folder is to be made available to the examiner or examiners to review. 

The examiner or examiners is to provide a detailed review of the Veteran's pertinent medical history, current complaints, and the nature and extent of any disability due to lumbar spine, radiculopathy in both lower extremities, and CAD. 

The examiner or examiners must described the functional limitations as a result of his disability due to CAD, lumbar spine, radiculopathy in both lower extremities, residuals shell fragment wounds in both lower extremities, tinnitus, and PTSD.

A complete rationale for any opinion offered must be provided.

3. After completing the above actions, the AOJ should readjudicate the Veteran's increased rating claims, to include entitlement to TDIU, with consideration of all evidence of record. If any claim remains denied, the Veteran should be issued a supplemental statement of the case, and afforded an opportunity to respond before the file is returned to the Board for further appellate consideration.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
MICHAEL LANE
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs