﻿Citation Nr: AXXXXXXXX
Decision Date: 06/30/20 Archive Date: 06/30/20

DOCKET NO. 190618-14892
DATE: June 30, 2020

ORDER

As new and relevant evidence has been received, the issue of entitlement to service connection for a bilateral eye disability will be readjudicated.

Entitlement to compensation pursuant to 38 U.S.C. § 1151 for a bilateral eye disability is denied.

Entitlement to an effective date earlier than March 26, 2008 for the grant of service connection for chronic obstructive pulmonary disease (COPD) is denied.

Entitlement to an earlier effective date of March 26, 2008 for the grant of service connection for radiculopathy of the right lower extremity (sciatic nerve) is granted.

Entitlement to an earlier effective date of March 26, 2008 for the grant of service connection for radiculopathy of the left lower extremity (sciatic nerve) is granted.

Entitlement to an earlier effective date of March 26, 2008 for the grant of service connection for radiculopathy of the left lower extremity (femoral nerve) is granted.

REMANDED

Entitlement to service connection for a bilateral eye disability is remanded.

Entitlement to an initial disability rating in excess of 30 percent for COPD is remanded.

Entitlement to a rating in excess of 20 percent for degenerative disc disease of the lumbar spine is remanded.

Entitlement to an initial rating in excess of 10 percent for radiculopathy of the right lower extremity (sciatic nerve) is remanded.

Entitlement to an initial rating in excess of 20 percent for radiculopathy of the left lower extremity (sciatic nerve) is remanded.

Entitlement to an initial rating in excess of 20 percent for radiculopathy of the left lower extremity (femoral nerve) is remanded.

Entitlement to service connection for diabetes mellitus type II is remanded.

Entitlement to service connection for peripheral neuropathy of the right lower extremity, to include as secondary to diabetes mellitus type II, is remanded.

Entitlement to service connection for peripheral neuropathy of the left lower extremity, to include as secondary to diabetes mellitus type II, is remanded.

Entitlement to service connection for ischemic heart disease is remanded.

Entitlement to service connection for peripheral artery disease of the right lower extremity, to include as secondary to ischemic heart disease, is remanded.

Entitlement to service connection for peripheral artery disease of the left lower extremity, to include as secondary to ischemic heart disease, is remanded.

Entitlement to service connection for below-the-knee amputation of the right leg, to include as secondary to diabetes mellitus type II and/or peripheral artery disease, is remanded.

Entitlement to service connection for a right knee disability is remanded.

Entitlement to service connection for a left knee disability is remanded.

Entitlement to service connection for a left ankle disability is remanded.

Entitlement to service connection for a left foot disability is remanded.

Entitlement to service connection for an acquired psychiatric disorder, to include as secondary to service-connected disease or injury, is remanded.

Entitlement to special monthly compensation (SMC) based on the need for regular aid and attendance is remanded.

Entitlement to an effective date earlier than June 26, 2017 for the award of a total disability rating based upon individual unemployability (TDIU) is remanded.

FINDINGS OF FACT

1. In a March 2014 decision, the Board of Veterans’ Appeals (Board) denied service connection for a bilateral eye disability and cataracts. Additional evidence has been received since that decision that tends to prove or disprove a matter in issue.

2. There is no probative evidence of record demonstrating that the Veteran sustained an additional bilateral eye disability as a result of VA care that was proximately due to VA’s carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA, or an event not reasonably foreseeable.

3. The Veteran’s claim for service connection for COPD was received by VA on March 26, 2008. There is no probative evidence that he submitted any communications prior to that date requesting a determination of entitlement to benefits for a respiratory disorder.

4. A claim for service connection for radiculopathy of the right lower extremity was reasonably raised in conjunction with a claim for service connection for lower back problems that was received by VA on March 26, 2008. A March 2013 rating decision granting service connection for degenerative disc disease of the lumbar spine did not implicitly deny entitlement to service connection for radiculopathy of the right lower extremity. Hence, the Veteran’s reasonably raised claim for service connection for radiculopathy of the right lower extremity has been pending since VA’s receipt of his original claim in March 2008.

5. A claim for service connection for radiculopathy of the left lower extremity was reasonably raised in conjunction with a claim for service connection for lower back problems that was received by VA on March 26, 2008. A March 2013 rating decision granting service connection for degenerative disc disease of the lumbar spine did not implicitly deny entitlement to service connection for radiculopathy of the left lower extremity. Hence, the Veteran’s reasonably raised claim for service connection for radiculopathy of the left lower extremity (including sciatic nerve involvement) has been pending since VA’s receipt of his original claim in March 2008.

6. A claim for service connection for radiculopathy of the left lower extremity was reasonably raised in conjunction with a claim for service connection for lower back problems that was received by VA on March 26, 2008. A March 2013 rating decision granting service connection for degenerative disc disease of the lumbar spine did not implicitly deny entitlement to service connection for radiculopathy of the left lower extremity. Hence, the Veteran’s reasonably raised claim for service connection for radiculopathy of the left lower extremity (including femoral nerve involvement) has been pending since VA’s receipt of his original claim in March 2008.

CONCLUSIONS OF LAW

1. New and relevant evidence having been received, the criteria for readjudicating the issue of entitlement to service connection for a bilateral eye disability have been met. 38 U.S.C. §§ 5108, 5303 (2012); 38 C.F.R. §§ 3.12, 3.156(d) (2019).

2. The criteria for compensation under the provisions of 38 U.S.C. § 1151 for a bilateral eye disability have not been met. 38 U.S.C. §§ 1151, 5107 (2012); 38 C.F.R. § 3.361 (2019).

3. The criteria for an effective date earlier than March 26, 2008 for the grant of service connection for COPD have not been met. 38 U.S.C. § 5110 (2012); 38 C.F.R. § 3.400 (2019).

4. The criteria for an earlier effective date of March 26, 2008 for the grant of service connection for right lower extremity radiculopathy (sciatic nerve) have been met. 38 U.S.C. § 5110 (2012); 38 C.F.R. § 3.400 (2019).

5. The criteria for an earlier effective date of March 26, 2008 for the grant of service connection for left lower extremity radiculopathy (sciatic nerve) have been met. 38 U.S.C. § 5110 (2012); 38 C.F.R. § 3.400 (2019).

6. The criteria for an earlier effective date of March 26, 2008 for the grant of service connection for left lower extremity radiculopathy (femoral nerve) have been met. 38 U.S.C. § 5110 (2012); 38 C.F.R. § 3.400 (2019).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from December 1967 to June 1974 and from March 1976 to March 1980.

On February 19, 2019, the new modernized decision review system created by the Veterans Appeals Improvement and Modernization Act, also known as the Appeals Modernization Act (AMA), went into effect. Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017). This law creates a new framework for veterans dissatisfied with VA’s decision on their claim to seek review. Here, the Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program.

The matters on appeal were previously adjudicated by the Agency of Original Jurisdiction (AOJ) in multiple rating decisions and, following timely appeals by the Veteran under the Legacy system, readjudicated in June 2010, February 2018, and April 2018 Statements of the Case (SOCs) (three separate SOCs were issued in February 2018). In May 2018, the Veteran selected the Higher-Level Review lane when he submitted his RAMP election form. Accordingly, a RAMP decision was issued in July 2018. The Veteran filed a notice of disagreement in June 2019, wherein he availed himself of the right to submit additional evidence within a 90-day period and then have his appeal reviewed by a Veterans Law Judge.

I. New and Relevant Evidence

The Veteran seeks service connection for a bilateral eye disability. Implicit in this claim is the contention that new and relevant evidence has been received which is sufficient to readjudicate a previously disallowed claim as to this issue.

In general, a claim that has been denied in an unappealed Board decision is final. 38 U.S.C. § 7104(a); 38 C.F.R. § 20.1100. However, VA will readjudicate a claim if new and relevant evidenced is presented or secured. 38 C.F.R. § 3.156(d). “Relevant evidence” is evidence that tends to prove or disprove a matter in issue. 38 C.F.R. § 3.2501(a)(1).

Under the prior standard for readjudicating previously denied claims, claimants would have to submit “new and material evidence” to “reopen” their claims. New evidence means existing evidence not previously submitted to agency decision makers. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a).

Because the Veteran in this case has pursued an appeal under the AMA, his burden to provide “new and material evidence” is reduced. Instead, the evidence necessary for VA to readjudicate his claim must be merely “new and relevant.” The new standard is a lower standard that the “new and material evidence” standard because the statutory definition of “relevant” does not require that the new evidence relate to an unestablished fact or raise a reasonable possibility of substantiating the claim. The Board will consider this lower standard in deciding the appellant’s appeal.

Also, because the relaxed, new-and-relevant-evidence standard is new, neither U.S. Court of Appeals for Veterans Claims (Court) nor the U.S. Court of Appeals for the Federal Circuit has created case law related to applications to readjudicate previously denied claims based on submission of new and relevant evidence. Still, because VA has lowered the standard for reopening finally disallowed claims, the Board will consider case law related to claims to reopen based on new and material evidence to the extent it remains applicable or is reasonably analogous and pertinent to the present claims. For example, for purposes of reopening a claim, the credibility of newly submitted evidence is generally presumed unless evidence is inherently incredible or beyond the competence of the witness. Justus v. Principi, 3 Vet. App. 510, 513 (1992). In this case, in deciding whether any new and relevant evidence has been submitted sufficient to readjudicate the claim, the Board will presume the evidence is credible.

In this case, the Veteran previously filed a claim for service connection for a bilateral eye disability resulting from in-service chemical burns in March 2008. In a March 2014 decision, the Board denied the claim. In its decision, the Board noted that the Veteran had been diagnosed with a number of eye disorders, including bilateral neovascularization, diabetic retinopathy, cataracts, dry eye, and refractive error. The Board acknowledged the Veteran’s contention that his eye problems were the result of chemical burns to his eyes which occurred during service. Specifically, the Veteran reported that in 1969 he suffered chemical burns to his eyes when a fire extinguisher fell off a forklift, which damaged his eyes. The Board noted that the Veteran’s service treatment records confirmed that the Veteran sustained chemical burns to both eyes as a result of a fire extinguisher accident in October 1969. Consequently, the Board concluded that both the “current disability” and “in-service incurrence injury element” of the Veteran’s service connection claim had been met.

Turning to the nexus element, the Board found that the record did not contain competent evidence of a causal link between the in-service chemical burns and the Veteran’s current eye disabilities. The Board summarized the Veteran’s statements as containing nothing more than “a general, conclusory assertion of a nexus.” Notably, the Board further found that “[t]he Veteran has not reported that he had persistent symptoms of the eyes beginning with the 1969 chemical burns and continuing to the present.”

Since the March 2014 Board decision, the Veteran has submitted additional statements that support his claimed nexus between his current eye disabilities and the 1969 chemical burns. Specifically, in an August 2017 statement, he stated that following the burns he was treated with ointment and bandages and was “totally blind” for two weeks. When the bandages were removed, he reported experiencing “cloudy vision and halo effects when looking at bright lights and a glare.” He further stated, “This condition has remained with me all of these years and has never healed properly, only worsening over the years.” 

In light of the statements described above, the Board finds that new and relevant evidence has been received that is sufficient to readjudicate the issue of entitlement to service connection for a bilateral eye disability. In short, the Veteran has provided competent lay evidence of persistent eye-related symptomatology from service until the present day—precisely the evidence the Board determined was lacking in its prior denial. The Veteran’s assertions regarding the etiology of his current bilateral eye disability constitute new evidence (which is presumed credible) that tends to prove or disprove a matter in issue—namely, a nexus between his current disability and a documented in-service injury. See 38 C.F.R. § 3.156(d). Accordingly, the issue on appeal will be readjudicated.

II. Compensation Pursuant to 38 U.S.C. § 1151

The Veteran seeks compensation pursuant to 38 U.S.C. § 1151 for a bilateral eye disability. Because he has provided no legal or factual basis for such an award, his claim must be denied.

Compensation under 38 U.S.C. § 1151 is awarded for a qualifying additional disability caused by improper VA treatment. A disability is a qualifying additional disability if the disability was not the result of the veteran’s willful misconduct and the disability was caused by hospital care, medical or surgical treatment, or examination furnished the veteran under any law administered by the Secretary of the VA, either by a Department employee or in a Department facility and the proximate cause of the disability was carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of the Department in furnishing the hospital care, medical or surgical treatment, or examination; or an event not reasonably foreseeable. 38 U.S.C. § 1151; 38 C.F.R. § 3.361.

In Viegas v. Shinseki, the Federal Circuit noted that section 1151 delineates three prerequisites for obtaining disability compensation. First, a putative claimant must incur a “qualifying additional disability” that was not the result of his own “willful misconduct.” 38 U.S.C. § 1151(a). Second, that disability must have been “caused by hospital care, medical or surgical treatment, or examination furnished the Veteran” by VA or in a VA facility. Finally, the “proximate cause” of the veteran’s disability must be “carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part” of VA, or “an event not reasonably foreseeable.” See Viegas v. Shinseki, 705 F.3d 1374 (Fed. Cir. 2013); 38 U.S.C. § 1151(a)(1)(A), (a)(1)(B). Thus, section 1151 contains two causation elements—a veteran’s disability must not only be caused by the hospital care or medical treatment he received from VA, but also must be proximately caused by the VA’s fault or an unforeseen event. 

In determining whether a veteran has an additional disability, VA compares the veteran’s condition immediately before the beginning of the hospital care or medical or surgical treatment upon which the claim is based to the veteran’s condition after care or treatment is rendered. 38 C.F.R. § 3.361(b). 

To establish causation, the evidence must show that the hospital care or medical or surgical treatment resulted in the veteran’s additional disability. Merely showing that a Veteran received care or treatment and that the Veteran has an additional disability does not establish causation. 38 C.F.R. § 3.361(c)(1). 

Hospital care or medical or surgical treatment cannot cause the continuance or natural progress of a disease of injury for which the care or treatment was furnished unless VA’s failure to timely diagnose and properly treat the disease or injury proximately caused the continuance or natural progress. 38 C.F.R. § 3.361(c)(2). 

To establish that carelessness, negligence, lack of proper skill, error in judgment, or similar instance on VA’s part in furnishing hospital care, medical or surgical treatment, or examination proximately caused a veteran’s additional disability, it must be shown that the hospital care or medical or surgical treatment caused the veteran’s additional disability; and (i) VA failed to exercise the degree of care that would be expected of a reasonable health care provider, or (ii) VA furnished the hospital care or medical or surgical treatment without the veteran’s informed consent. Determinations of whether there was informed consent involve consideration of whether the health care providers substantially complied with the requirements of 38 C.F.R. § 17.32. Minor deviations from the requirements of 38 C.F.R. § 17.32 that are immaterial under the circumstances of a case will not defeat a finding of informed consent. 38 C.F.R. § 3.361(d)(1). 

Whether the proximate cause of a veteran’s additional disability was an event not reasonably foreseeable is in each claim to be determined based on what a reasonable health care provider would have foreseen. The event need not be completely unforeseeable or unimaginable but must be one that a reasonable health care provider would not have considered to be an ordinary risk of the treatment provided. In determining whether an event was reasonably foreseeable, VA will consider whether the risk of that event was the type of risk that a reasonable health care provider would have disclosed in connection with the informed consent procedures of 38 C.F.R. § 17.32. 38 C.F.R. § 3.361(d)(2). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

In this case, the Veteran has provided no specific allegations in support of his claim for compensation pursuant to 38 U.S.C. § 1151. In a June 2017 claim form in which he addressed his bilateral eye disability, he indicated that he was seeking entitlement for both direct service connection and compensation “under 1151.” However, he did not specify any legal or factual basis for entitlement under 38 U.S.C. § 1151. The July 2018 AMA decision denying the claim noted that the Veteran was sent a letter in June 2017 asking for details regarding how and when he felt that any VA hospital care, medical or surgical treatment, or examination resulted in his eye disability. The Veteran did not respond to this letter. (The Veteran’s claim for service connection for a bilateral eye disability is a different matter. As noted above, he has provided specific allegations that his current disability originated from an October 1969 chemical burn. The Board has determined that readjudication of that claim is required and, as is discussed in detail in the Remand section below, has remanded the claim for further evidentiary development.)

The Board notes that, in order for VA to process claims, individuals applying for VA benefits have a responsibility to cooperate with the agency in the gathering of the evidence necessary to establish allowance of benefits. See Morris v. Derwinski, 1 Vet. App. 260, 264 (1991). Moreover, VA’s duty to assist is not always a one-way street, and if a veteran wishes help, he cannot passively wait for it in those circumstances where he may or should have information that is essential in obtaining the putative evidence. Wood v. Derwinski, 1 Vet. App. 190, 193 (1991); see also Swann v. Brown, 5 Vet. App. 229, 233 (1993).

Here, the Board finds that there is simply no probative evidence of record to suggest that the Veteran sustained additional disability in his eyes that was the result of negligence or carelessness on the part of VA. The Board acknowledges the Veteran’s general claim of entitlement to compensation pursuant to 38 U.S.C. § 1151. However, in the absence of competent evidence of any instance of VA treatment causing additional disability, his claim must be denied.

III. Earlier Effective Dates

The assignment of an effective date for an award of service connection is generally governed by 38 U.S.C. § 5110 and 38 C.F.R. § 3.400. Unless specifically provided otherwise, the effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increased compensation shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefore. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400.

The term “claim” means a written communication requesting a determination of entitlement or evidencing a belief in entitlement to a specific benefit. 38 C.F.R. § 3.1(p) (2014). 

Effective March 24, 2015, VA amended its regulations to require that all claims governed by VA’s adjudication regulations be filed on a standard form. Prior to March 24, 2015, VA recognized both formal and informal claims. See 38 C.F.R. § 3.1(p) (2014). The amendments also, among other things, eliminated the constructive receipt of VA reports of hospitalization or examination and other medical records as informal claims to reopen. See 79 Fed. Reg. 57,660 (Sept. 25, 2014), codified as amended at 38 C.F.R. §§ 3.151, 3.155 (2016). The amended regulations, however, apply only to claims filed on or after March 24, 2015.

1. COPD

The Veteran seeks an effective date earlier than March 26, 2008 for the grant of service connection for COPD. For the following reasons, the Board finds that an earlier effective date is not warranted.

The Veteran first filed a claim for VA disability compensation in March 2008. In June 2008, he clarified that he was seeking service connection for a respiratory disorder; he reported that he had inhaled toxic substances in service which resulted in respiratory impairment. After a lengthy appeals process, service connection for COPD was ultimately granted in a November 2017 rating decision, and an effective date of March 26, 2008 was assigned based on the date VA received the original claim. The Veteran contends that an earlier effective date is warranted.

The Board has carefully reviewed the record to determine whether any communications by or on behalf of the Veteran (including informal communications) were submitted prior to his current effective date that could be construed as a claim for service connection for a respiratory disorder. However, the Board finds that there is simply no such communication of record that could serve as the basis for an earlier effective date under 38 U.S.C. § 5110(a). On review, the March 2008 claim was the first correspondence of record in which the Veteran alluded to respiratory problems—indeed, the March 2008 claim was the first correspondence of any kind received from the Veteran in which he indicated entitlement to disability compensation. (The Veteran has provided no specific arguments in support of an earlier effective date; rather, he has simply stated in his notices of disagreement that he is entitled to one.) 

The Board acknowledges that the Veteran may have experienced respiratory distress, or may even have been diagnosed with a respiratory disorder, prior to his current effective date. Notwithstanding, while clinical records were previously recognized, in some instances, as informal claims under 38 C.F.R. § 3.157(b) (2014), this applied only if the evidence pertained to examination or treatment of a disability for which service connection had been previously established, or when a claim specifying the benefit sought was received within one year from the date of such examination, treatment or hospital admission. The Veteran does not assert, and the evidence of record does not reflect, that either situation applies here with respect to his COPD.

In sum, having reviewed all communications in the claims file, the Board finds that there is no probative evidence that the Veteran submitted any formal or informal communications with respect to his COPD (or other respiratory disorder) prior to his March 2008 claim. See 38 C.F.R. § 3.1(p) (2014). Thus, there is no legal basis for awarding an effective date earlier than March 26, 2008.

2. Radiculopathy of the bilateral lower extremities 

The Veteran seeks earlier effectives dates for the awards of service connection for his bilateral lower extremity radiculopathy. For the following reasons, the Board finds that an earlier effective date of March 26, 2008 is warranted for these benefits.

A review of the record shows that the Veteran submitted a claim for service connection for a “lower back problem” in March 2008. In May 2011, in conjunction with this claim, he underwent a VA spine examination (the Board cannot explain why the Veteran was forced to wait more than three years for an examination). 

In any event, the May 2011 examination report reflects that the Veteran sustained an in-service back injury which resulted in “excruciating pain radiating down to his lower extremities.” The Veteran reported experiencing intermittent pain since the injury and stated that his current symptoms included back pain with “occasional radiating pain to his bilateral lower extremities down to the knees,” as well as “intermittent numbness and tingling in the thighs.” A diagnosis of degenerative disc disease of the lumbar spine was noted, but no opinion was provided regarding the clearly indicated lower extremity symptoms.

Thereafter, service connection for degenerative disc disease of the lumbar spine was granted in a March 2013 rating decision. The Veteran did not appeal that decision. In June 2017, he submitted a formal claim for service connection for radiculopathy of the lower extremities. He was afforded an examination of the peripheral nerves in July 2017, which identified the Veteran’s symptoms of shooting pain and numbness as indications of radiculopathy. Thereafter, the RO granted service connection for lower extremity radiculopathy (with sciatic nerve involvement in the right lower extremity and both sciatic and femoral nerve involvement in the left lower extremity) with an effective date of June 26, 2017. The Veteran then perfected the instant appeal regarding the effective date.

The Board notes that when a claim is filed or is reasonably raised, it will remain pending until there is an explicit adjudication for the same disability or until the claimant could reasonably recognize in a subsequent agency decision that the claim was fully adjudicated. Ingram v. Nicholson, 21 Vet. App. 232, 243 (2007). On the other hand, pursuant to the implicit denial doctrine, under certain circumstances “a claim for benefits will be deemed to have been denied, and thus finally adjudicated, even if [the RO or the Board] did not expressly address that claim in its decision.” Cogburn v. Shinseki, 24 Vet. App. 205 (2010), aff’d, Cogburn v. McDonald, 809 F.3d 1232 (2016). The standard for determining whether a claim was implicitly denied is based in large part on whether a reasonable person would recognize that the prior claim was denied. Id. at 215; see also Adams v. Shinseki, 568 F.3d 956, 961 (Fed. Cir. 2009); Jones v. Shinseki, 619 F.3d 1368, 1373 (Fed. Cir. 2010) (the key question for whether there is an implied denial of a claim is whether the claimant has sufficient notice such that he or she would be reasonably expected to understand that entitlement to benefits for the claimed disability was denied, and such that the claimant can decide whether to continue on with attempting to substantiate the claim or to accept the decision).

To determine whether there was implicit denial of a claim, the Court has set out four factors. The first factor is “the specificity of the claims or the relatedness of the claims.” Cogburn, 24 Vet. App. at 212-15. The Court noted that this first factor may be considered in light of the legal standards under which the claimant is seeking benefits. Thus, given that a claimant is not a medical professional, the claimant “must describe the nature of the disability for which he is seeking benefits . . . by referring to a body part or system that is disabled or by describing symptoms of a disability.” Id. at 215. The second factor is “the specificity of the adjudication, i.e., does the adjudication allude to the pending claim in such a way that it could reasonably be inferred that the prior claim was denied?” Id. at 212-15. The Court reminded the Board that this determination should be made pursuant to a reasonable person standard, as is provided by prior case precedent. The third factor is “the timing of the claims.” Id. at 213. The fourth factor is “whether the claimant is represented.” Id. at 213.

Initially, the Board finds that the Veteran clearly identified lower extremity impairment during the May 2011 VA examination, in conjunction with his claim for service connection for lower back problems. Moreover, he reported during that examination that these symptoms had persisted since his in-service back injury. These symptoms were subsequently identified by medical professionals as radiculopathy associated with his service-connected lumbar spine disability. Thus, resolving reasonable doubt in the Veteran’s favor, he can fairly be said to have raised the issue in conjunction with his March 2008 claim. The Board acknowledges that the Veteran did not identify his symptoms as radiculopathy in the March 2008 claim itself; however, he clearly reported symptoms of pain radiating down both lower extremities, as well as numbness and tingling, during his May 2011 VA examination, and it is not the Veteran’s fault that VA made him wait more than three years for a spine examination. The Board will not penalize the Veteran for failing to raise his lower extremity symptoms earlier in light of VA’s delay in assisting the development of his claim.

The Board further finds that the issue of entitlement to service connection for radiculopathy was not implicitly denied in the March 2013 rating decision which granted service connection for degenerative disc disease of the lumbar spine. That decision simply stated that a 20 percent disability was being awarded based on the degree of limitation of motion of the Veteran’s thoracolumbar spine. No mention was made of lower extremity symptoms, nor was there any indication in that decision that the Veteran’s symptoms of lower extremity pain, tingling, or numbness were considered by the RO. Hence, when applying the Cogburn factors (particularly the first two factors), there can be no doubt that not only did the Veteran identify lower extremity nerve symptoms in conjunction with his claim for lower back problems; the March 2013 rating decision did not address these symptoms such that a reasonable person would have known that the decision constituted a denial of service connection for lower extremity radiculopathy. As such, the March 2013 rating decision did not constitute an implicit denial of the Veteran’s reasonably raised claim for bilateral lower extremity radiculopathy. 

In light of the above evidence, and resolving reasonable doubt in the Veteran’s favor, the Board finds that the correct effective date of the awards of service connection for bilateral lower extremity radiculopathy is March 26, 2008, the date the Veteran filed his claim for service connection for lower back problems. See 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400. To this extent, his claims will be granted.

REASONS FOR REMAND

Although the Board regrets the delay, the remaining claims on appeal must be remanded to correct pre-decisional errors in VA’s duty to assist the Veteran in developing his claims. See 38 C.F.R. § 20.904(a) (providing that remand is warranted when “further evidence, clarification of the evidence, correction of a procedural defect, or any other action is essential for a proper appellate decision”).

1. Entitlement to service connection for a bilateral eye disability

The Veteran contends that his current bilateral eye disability resulted from chemical burns to his eyes which occurred in service. As noted above, the Board has determined that this claim must be readjudicated based on the submission of new and relevant evidence—namely, lay statements from the Veteran suggesting continuous eye symptomatology since the 1969 chemical burns. However, prior adjudicative actions by the AOJ have not considered the merits of the underlying claim. Therefore, at this juncture, a decision on the claim would prejudice the Veteran, as it would deprive him of initial AOJ review. See Hickson v. Shinseki, 23 Vet. App. 394 (2010). Thus, a remand is required for initial AOJ consideration, development, and adjudication of the claim on the merits.

2. Entitlement to an increased initial rating for COPD

The Veteran’s COPD is rated under Diagnostic Code (DC) 6604. 38 C.F.R. § 4.97. That DC provides evaluations from 10 to 100 percent based on reduced lung capacity and, in more severe cases, cor pulmonale, right ventricular hypertrophy, pulmonary hypertension, episodes of acute respiratory failure, or the need for outpatient oxygen therapy. Id.

The Veteran last underwent a VA examination for his service-connected COPD in April 2014. Notably, that examination did not address all of the criteria listed under DC 6604. As a result, the Board is unable to rate his symptoms. Moreover, prior to the July 2018 RAMP rating decision, there was evidence that the Veteran’s symptoms had worsened since the April 2014 VA examination. For example, in an August 2017 statement the Veteran reported “reduced lung capacity, coughing, and pain in my lungs.” Accordingly, the Board finds that an updated VA examination is necessary to correct a pre-decisional duty to assist error. See Snuffer v. Gober, 10 Vet. App. 400 (1997) (noting that a claimant is entitled to a new VA examination where there is evidence that the condition has worsened since that last examination); Green v. Derwinski, 1 Vet. App. 121, 124 (1991) (VA has a duty to provide the Veteran with a thorough and contemporaneous medical examination); Caffrey v. Brown, 6 Vet. App. 377, 381 (1994) (an examination too remote for rating purposes cannot be considered “contemporaneous”).

3. Entitlement to an increased rating for degenerative disc disease of the lumbar spine, to include associated radiculopathy of the bilateral lower extremities

The Veteran last underwent a VA examination for his service-connected lumbar spine disability in July 2017. However, in an August 2017 statement (submitted prior to the July 2018 RAMP decision on appeal), he indicated that his back pain had “worsened since my last evaluation.” Accordingly, the Board finds that an updated VA examination is necessary. See Snuffer, 10 Vet. App. 400; Green, 1 Vet. App. at 124 (1991); Caffrey, 6 Vet. App. at 381.

In addition, the Board notes that the July 2017 examination failed to comply with Sharp v. Shulkin, 29 Vet. App. 26 (2017). Specifically, despite the Veteran’s report of flare-ups, the examiner did not attempt to estimate the degree of additional functional loss during such flare-ups. This information should be provided on remand.

The Veteran further contends that his bilateral lower extremity radiculopathy warrants increased ratings. Because he implied in the August 2017 statement noted above that his lower extremity symptoms were inseparable from his back pain (which he claimed had worsened since the July 2017 VA examination), the Board finds that VA’s duty to assist error extends to the evaluations for radiculopathy. Thus, the Veteran’s claims for increased ratings for radiculopathy must be remanded as well. See Harris v. Derwinski, 1 Vet. App. 180 (1991) (two issues are “inextricably intertwined” when they are so closely tied together that a final decision on one issue cannot be rendered until a decision on the other issue has been rendered).

4. Entitlement to service connection for diabetes mellitus type II and ischemic heart disease, to include associated peripheral neuropathy, peripheral artery disease, and below-the-knee amputation of the right leg

The Veteran seeks service connection for diabetes mellitus type II and ischemic heart disease, including associated complications. He has suggested over the course of his appeal that these diseases are related to his exposure to a variety of harmful substances in service. For example, in multiple August 2017 statements, the Veteran described inhaling “toxic fumes” at Ellsworth Air Force Base and other bases while on active duty. He specifically reported being exposed to exhaust, asbestos, PD680 solvent, methyl ethyl ketone, spray paints, fungicides, chromate liquids, and lead-based substances. He has also alleged that he was exposed to Beryllium while maintaining missile sites. (The Veteran served on active duty as a missile mechanic.) In general, he contends that these exposures are causally related to his current medical problems. 

The Board acknowledges the Veteran’s contentions and has no reason to doubt that he was exposed to toxic substances in service. However, the evidence of record at this juncture is insufficient to determine whether there is a nexus between these exposures and the specific diseases for which he is claiming service connection. The Veteran has not been afforded VA examinations to evaluate his diabetes mellitus type II or ischemic heart disease, and the Board lacks the expertise to opine as to the significance of his contentions. See Colvin v. Derwinski, 1 Vet. App. 171, 175 (1991) (the Board is prohibited from exercising its own independent judgment to resolve medical questions). Moreover, sufficient evidence existed at the time of the July 2018 RAMP decision on appeal to warrant such examinations. Consequently, the claims must be remanded to correct a pre-decisional duty to assist error by affording the Veteran the appropriate VA examinations. See 38 C.F.R. § 3.159(c)(4); McClendon v. Nicholson, 20 Vet. App. 79 (2006) (describing the circumstances under which VA’s duty to afford a claimant a medical examination is triggered).

The Veteran also claims entitlement to service connection for a below-the-knee amputation of his right leg. His VA outpatient notes reflect that the amputation (which took place in June 2014) was due to a diabetic foot ulcer and resulting poor blood flow. In addition, the Veteran submitted a September 2017 opinion from a private physician suggesting that the amputation was the result of peripheral artery disease. Regardless, it is clear that the amputation claim is intertwined with the claims for diabetes mellitus type II and ischemic heart disease, and must therefore be remanded as well. See Harris, 1 Vet. App. 180.

5. Entitlement to service connection for bilateral knee, left ankle, and left foot disabilities

The Veteran seeks service connection for a number of lower extremity orthopedic disabilities. In support of these claims, he submitted a September 2017 opinion from a private physician suggesting that the disabilities may have originated from physical activity the Veteran was ordered to engage in, including climbing ladders and “working on hard concrete wearing combat boots,” during his period of active duty. Notwithstanding, there is some conflicting evidence of record which calls the physician’s findings into question. For example, the Veteran did not report any orthopedic problems during a February 1981 enlistment examination prior to his Reserve service. The private physician failed to adequately address these inconsistencies.

The Board notes that the Veteran has never been afforded any VA examinations with respect to his bilateral knee, left foot, or left ankle disabilities. In light of the private physician’s opinion and the Veteran’s general lay contentions, there was sufficient evidence at the time of the July 2018 RAMP decision to warrant examinations to more fully evaluate the claims. As such, a remand is necessary to correct a pre-decisional error in VA’s duty to assist. See 38 C.F.R. § 3.159(c)(4); McClendon, 20 Vet. App. 79.

6. Entitlement to service connection for an acquired psychiatric disorder, to include as secondary to service-connected disease or injury

The Veteran contends that he has developed an acquired psychiatric disorder as a result of his physical ailments. The September 2017 opinion from the private physician purports to link the Veteran’s psychiatric problems with his service-connected lumbar spine disability and associated radiculopathy. In addition, the Veteran’s wife indicated in an August 2017 statement that the Veteran was “depressed about his medical issues.” This evidence was sufficient to warrant a VA examination at the time of the July 2018 RAMP decision of record; however, the Veteran was not afforded such an examination. Consequently, the Board finds that a remand for an examination is required to correct a pre-decisional duty to assist error. See 38 C.F.R. § 3.159(c)(4); McClendon, 20 Vet. App. 79.

7. SMC and entitlement to an earlier effective date for the grant of a TDIU

The Veteran seeks additional compensation in the form of SMC, as well as entitlement to a TDIU prior to June 26, 2017. However, because the claims discussed above are being remanded to correct procedural defects and could result in additional disability compensation, the Board finds that a decision on the matters of entitlement to SMC and/or entitlement to a TDIU prior to June 26, 2017 would be premature at this juncture. In short, the pre-decisional errors in VA’s duty to assist that have been described above extend to the claims for SMC and/or an earlier effective date for TDIU. A remand is therefore warranted. See Harris, 1 Vet. App. 180.

The matters are REMANDED for the following action:

1. After obtaining the above-noted records and undertaking any additional development deemed warranted, take adjudicatory action on the merits of the Veteran’s claim for service connection for a bilateral eye disability. If the benefits sought remain denied, the Veteran and his representative should be issued a Supplemental Statement of the Case. An appropriate period of time should be allowed for response. 

2. Schedule the Veteran for an examination to determine the current severity of his COPD. The examiner should provide a full description of the disability and report all signs and symptoms necessary for evaluating the Veteran’s disability under the rating criteria.

3. Schedule the Veteran for an examination of the current severity of his lumbar spine disability, to include associated bilateral lower extremity radiculopathy. To the extent possible, the examiner must test the Veteran’s active motion, passive motion, and pain with weight-bearing and without weight-bearing. The examiner must also attempt to elicit information regarding the severity, frequency, and duration of any flare-ups, and the degree of functional loss during flare-ups. To the extent possible, the examiner should identify any symptoms and functional impairments due to the Veteran’s lumbar spine disability and discuss the effect of this disability on any occupational functioning and activities of daily living. The examiner is asked to describe whether pain significantly limits functional ability during flares, and if so, the examiner must estimate range of motion during flares. IF THE EXAMINATION DOES NOT TAKE PLACE DURING A FLARE, THE EXAMINER MUST GLEAN INFORMATION REGARDING THE FLARES’ SEVERITY, FREQUENCY, DURATION, AND FUNCTIONAL LOSS MANIFESTATIONS FROM THE VETERAN, MEDICAL RECORDS, AND OTHER AVAILABLE SOURCES. EFFORTS TO OBTAIN SUCH INFORMATION MUST BE DOCUMENTED. If there is no pain and/or no limitation of function, such facts must be noted in the report.

4. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of his diabetes mellitus type II, to include associated diabetic peripheral neuropathy. The clinician must opine as to whether it is at least as likely as not that the Veteran’s current diabetes mellitus type II is related to active service, to include as due to his exposure to toxic substances as described in his August 2017 statement. The clinician should specifically address the Veteran’s claimed exposure to exhaust fumes, asbestos, PD680 solvent, methyl ethyl ketone, spray paints, fungicides, chromate liquids, and lead-based substances, as well as his reported exposure to Beryllium while maintaining missile sites. The clinician must also opine as to whether the Veteran’s right leg below-the-knee amputation was secondary to his diabetes mellitus type II.

5. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of his ischemic heart disease, to include peripheral artery disease. The clinician must opine as to whether it is at least as likely as not that the Veteran’s current ischemic heart disease is related to active service, to include as due to his exposure to toxic substances as described in his August 2017 statement. The clinician should specifically address the Veteran’s claimed exposure to exhaust fumes, asbestos, PD680 solvent, methyl ethyl ketone, spray paints, fungicides, chromate liquids, and lead-based substances, as well as his reported exposure to Beryllium while maintaining missile sites. The clinician must also opine as to whether the Veteran’s right leg below-the-knee amputation was secondary to his peripheral artery disease.

6. Schedule the Veteran for examination/s by appropriate clinician/s to determine the nature and etiology of his claimed bilateral knee, left ankle, and left foot disabilities. The clinician/s must opine as to whether it is at least as likely as not that any of these disabilities were incurred in active service, or are otherwise related to active service. The clinician/s must specifically discuss the September 2017 opinion of Dr. Ellis that purports to link the Veteran’s current disabilities to in-service physical activities such as climbing ladders or walking on concrete in combat boots.

7. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of his claimed acquired psychiatric disorder. The clinician must opine as to the following:

(a) Whether it is at least as likely as not that any such disorder was incurred in active service, or is otherwise related to active service. 

(b) Whether it is at least as likely as not that any acquired psychiatric disorder was caused or aggravated by any service-connected disease or injury. Specifically discuss the September 2017 private physician’s statement indicating a link between the Veteran’s depression and his service-connected lumbar spine disability and associated radiculopathy. Also discuss the Veteran’s wife’s August 2017 statement indicating that the Veteran was “depressed about his medical issues.”

 

 

A. S. CARACCIOLO

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board T. Minot, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.